L. CHARLES WRIGHT, Retired Appellate Judge.
The Alabama Insurance Department filed a petition for restraining order and order to show cause with the Commissioner of Insurance for the State of Alabama, requesting that the Commissioner enter an order restraining Arthur J. Gallagher and Company and others from offering and selling property insurance on poultry houses in Alabama. The petition alleged that Gallagher was offering and selling poultry house insurance in Alabama in contravention of § 27-10-20, Code 1975, the surplus lines statute. Following a hearing on the petition, the Commissioner entered an or *371 der finding Gallagher’s actions to be viola-tive of § 27-10-20, Code 1975.
Gallagher filed a notice of appeal in the Montgomery County Circuit Court. Upon consideration of the record, the circuit court reversed the order of the Commissioner. The Department appeals.
Our standard of review, as well as that of the circuit court, is governed by § 27-2-32(e), Code 1975. That provision provides that the Commissioner’s order shall be taken as prima facie just and reasonable. The reviewing court shall reverse, vacate, or modify the Commissioner’s order in whole or in part if it finds that:
“(1) The commissioner erred to the prejudice of appellant’s substantial rights in his application of the law;
“(2) The decision or order was procured by fraud or was based upon a finding of facts contrary to the weight of the evidence; or
“(3) The commissioner’s action was arbitrary or capricious.”
The parties stipulated prior to the hearing on the petition that the issue for review would be limited to the meaning and applicability of § 27-10-20(1), Code 1975. Our review, therefore, is limited to the same issue. Vann Express, Inc. v. Phillips, 539 So.2d 296 (Ala.Civ.App.1988).
The statute at issue is as follows:
“If certain insurance coverages cannot be procured on terms acceptable to the insureds from authorized insurers, such coverages, designated ‘surplus lines,’ may be procured from unauthorized insurers subject to the terms and conditions of either subdivisions (1) or (2) of this section:
“(1) a. The insurance must be procured through a licensed surplus line broker;
“b. The full amount of insurance required must not be procurable, after diligent effort has been made to do so, from among the insurers authorized to transact and actually transacting that kind and class of insurance in this state or has been procured to th4 full extent such insurers are willing to insure;
“c. The insurance must not be procured for the purpose of securing advantages as to a lower premium rate than would be accepted by an authorized insurer; and
“d. This section, and this surplus line law, does not apply as to life insurance or disability insurance.”
(Emphasis added.)
The variance in the parties’ interpretation and application of the surplus line statute is based on the emphasized phrases above.
Gallagher is an independent insurance broker that operates in all fifty states and is listed on the New York Stock Exchange. Gallagher has a license to conduct business in Alabama and is represented in the state by its registered agent, Southeast Special Risk, Inc.
Gallagher began offering and selling its surplus line poultry house insurance policies in Alabama in 1989. The policies were sold through its registered agent. The carrier or underwriter for the policies was Lloyds of London or one of its syndicates. Lloyds and its syndicates are surplus lines carriers, which means that they are not licensed as authorized insurers in the state. There was no dispute that Gallagher and Lloyds are reputable companies. Lloyds has a guaranty fund consisting of between six hundred million and one billion dollars. The policies sold were “all risk” policies. Since 1989 Gallagher has sold approximately 250 policies, of which 30 had replaced existing coverage of a licensed insurance carrier.
During the period in which Gallagher was selling its policies, at least three licensed insurance companies were offering poultry house coverage. The three companies were Alfa Insurance Company, Cotton States Insurance Company, and National Security Fire and Casualty Company. Alfa and Cotton States are carriers with “captive agents,” which means that only their agents may market and sell their policies. *372 At the time of the hearing, Cotton States had “no more than 20” policies in effect in this state. Alfa had between 6,000 and 7,000. The policies offered by the three admitted carriers were “named perils” policies.
The evidence revealed a vast difference between Gallagher’s “all risk” policy and the admitted carriers’ “named perils” policies. Basically, a “named perils” policy is very limited in scope and coverage. An “all risk” policy is very broad in its coverage. Gallagher’s “all risk” policy provided earthquake, flood, replacement cost coverage, and broader collapse coverage. The admitted carriers “named perils” policies did not offer flood or earthquake insurance, and the replacement cost and collapse coverage were much narrower than that offered by Gallagher. For instance, Alfa only offered replacement cost coverage as an additional endorsement, and the coverage could only be obtained for houses less than ten years old. National Security would only insure up to 80% of the cash value of the house, and it would not insure houses with a value in excess of $50,000 per house or $200,000 per location, with the results being that it could not insure newly constructed houses. Concerning collapse coverage, Alfa was not offering coverage where the collapse was caused by the owner. It only covered instances where the collapse was caused by a listed peril. Cotton States only provided coverage for collapse due to weight of ice and snow. National Security only provided coverage for collapse due to weight of ice, sleet, and snow. Additional differences noted were the fact that Gallagher’s policy had a building ordinance provision, which the Alfa policy lacked, and Gallagher’s policy provided for loss of income, which the Alfa policy only offered with an endorsement. The policies also had different deductibles, cancellation rights, medical pay liability, coverage for damage to property of persons on the property, defense costs, and employer’s liability for the farm owner.
Julie Schatz, account executive for Gallagher, testified that the insureds who approached her were not satisfied with the “named perils” policies offered by the admitted carriers. In fact, several poultry farmers testified that Alfa’s policy was not acceptable to them. Schatz testified that it was her obligation to offer the insured the best coverage available, and that an “all risk” policy was better coverage than a “named perils” policy. She testified that she spent six months attempting to place the poultry business with an admitted carrier with noncaptive agents and was unsuccessful. She did not attempt to place any coverage with the carriers with captive agents, such as Alfa, because she was aware that those carriers offered only “named perils” policies, which were unacceptable to the potential insureds.
James Busby, formerly of Southeast Special Risk, Gallagher’s registered agent, testifying on behalf of the department, stated that in 1960 he had worked with the insurance commissioner and others to draft the surplus line law in Alabama. He testified that the intent behind the drafting was (1) to collect the premium tax on all nonadmit-ted business done in Alabama; and (2) to enable the Alabama public to have access to a nonadmitted market and they especially wanted to use companies such as Lloyds and not to use the so-called fly-by-night companies.
The Commissioner found that the Gallagher policies had been issued in violation of the surplus line statute, because an adequate and satisfactory market was available for poultry house insurance coverage through licensed, authorized insurance carriers and because the broker had not made a “diligent effort” to place the insurance with licensed carriers before resorting to unlicensed carriers. The Commissioner determined that there were no substantial differences between the different policies being offered. He further opined that any “diligent effort” under the surplus line statute to place insurance coverage in the admitted market must include licensed insurance carriers without regard to whether its agents are independent or captive. The Commissioner’s order prohibited Gallagher from marketing, selling, or offering poultry house insurance in Ala *373 bama through surplus lines to the extent that such insurance is available through authorized insurance carriers.
The circuit court entered an order finding that Gallagher had complied with the requirements of the surplus line statute and ordered that the Commissioner’s order be reversed. According to the circuit court, the intent of the surplus lines statute was to allow Alabama consumers to obtain insurance coverage on terms acceptable to the insureds, and that the Commissioner’s order attempted to limit the scope of the statute to situations where the admitted carriers had completely abandoned the field, and there was no risk of competition at all between the surplus lines insurance and that offered by the admitted carriers. It further noted that the evidence before the Commissioner demonstrated that Gallagher made a “diligent effort” to place the coverage with an admitted carrier in Alabama, prior to placing it with a surplus line carrier, and that there were significant differences between the coverage available in the admitted market and the Gallagher/Lloyds policy. The circuit court concluded that the Commissioner’s order was based upon findings of fact which were contrary to the weight of the evidence, and that the Commissioner’s action in entering the order was arbitrary and capricious. It further found that the Commissioner erred to the prejudice of Gallagher’s substantial rights in its application of the law to the case.
We agree with the circuit court’s assessment of the Commissioner’s order. We find the Commissioner’s order to be unreasonable, arbitrary, capricious, contrary to the weight of the evidence, and prejudicial to Gallagher’s substantial rights.
We ask the question — to whose benefit does the Commissioner’s interpretation of the surplus line statute inure?
Surely the insureds of this state do not benefit from such a harsh interpretation. According to the Commissioner’s rendition, an insured would be required to obtain a particular insurance coverage from an admitted insurer, even if the same type of coverage is available from a surplus line carrier and is more acceptable and advantageous to the insured. The insured would only be able to obtain surplus line coverage when the admitted carriers of Alabama do not provide coverage in that particular area. The insureds would be forced to accept less coverage from an admitted carrier though more acceptable coverage was available from a surplus line carrier.
The Commissioner states that, in reaching his decision, he was primarily concerned with protecting the interests of the insureds in this state. He opined that such protection is inherent when an insured bargains with a regulated, authorized carrier, because such arrangements afford the insured the mandatory statutory protection of the guaranty association. The evidence reflects that Lloyds and Gallagher are very reputable companies and that Lloyds has a substantial guaranty fund set up for the benefit of its insureds. We do not find that an insured doing business with Gallagher and Lloyds accepts any greater risk than any other insured doing business in this state with an admitted carrier.
The Commissioner’s rendition does not benefit the licensed surplus line brokers or the independent agents of the state. The Commissioner’s interpretation would cause brokers and agents to fail in their duty owed to the insured to obtain the best possible coverage.
The primary entity that benefits from the Commissioner’s interpretation of the surplus line statute is Alfa. At the time of the hearing Alfa had between 6,000 and 7,000 poultry house policies in force. The next closest admitted carrier had at the most 20 policies outstanding. The Commissioner’s interpretation would afford admitted carriers control of poultry house insurance business in the state whether or not their policies best served the needs of the prospective insureds.
We consider that such interpretation is contrary to the words of the statute and the intent of the legislature in its passage. The Commissioner’s order frustrates that intent, i.e., to provide access to the insured from nonadmitted carriers if desired cover *374 age is not reasonably available from authorized carriers. The judgment of the circuit court in setting aside the order of the Commissioner is affirmed.
The Department raises other issues that were not within the stipulated confines of the issue presented for review. We, therefore, decline to address such issues. Vann Express, Inc.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.