THOMPSON, Presiding Judge.
Jermaine Phillips appeals from a summary judgment entered in favor of National Security Fire & Casualty Company (“National Security”), Phillips’s homeowner’s insurance carrier, in his action arising from National Security’s denial of a claim Phillips had made under his policy.
The evidence submitted to the trial court supporting and in opposition to National Security’s motion for a summary judgment indicated the following. Phillips purchased a house in Whistler in February 2007. Phillips had been renting the house, and he was aware that the roof leaked. Therefore, as a condition of the purchase, Phillips required the seller to repair the roof. The seller did so, and the closing took place. Despite the repairs, however, the roof continued to leak. About one month after the closing, Global Roofing Company replaced the roof. Nevertheless, the roof continued to leak, causing damage to the interior of the house.
When Phillips bought the house, he also purchased a homeowner’s insurance policy from National Security (“the policy”). The policy was effective from February 16, 2007, to February 16, 2008, the period during which the events made the basis of this action occurred, and provided coverage for damage resulting from specific “perils.” In pertinent part, the policy stated as follows:
“We insure against direct physical loss caused by the following perils, unless the loss is excluded under the General Exclusions:

“1. Fire or Lightning

“2. Explosion

[[Image here]]
“3. Windstorm or Hail — However, we do not pay for loss:
“a. to the interior of a building or mobile home, or to property inside a structure caused by dust, rain, sand, sleet, snow or water, all whether driven by wind or not, which enter through an opening not made by the direct force of wind or hail;
[[Image here]]
“A Riot or Civil Commotion “5. Aircraft....
“6. Vehicles....
“7. Sudden and Accidental Damages from Smoke....
“8. Sinkhole Collapse....
“9. Volcanic Action....
[[Image here]]

“10. Vandalism....”

The “General Exclusions” portion of the policy specifically excluded damage incurred as the result of faulty workmanship or materials. The provision also included an “ensuing-loss” provision. The exclusion and ensuing-loss provision stated:
“We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.
[[Image here]]
“13. Errors, Omissions, and Defects — We do not pay for loss which results from one or more of the following:
“a. an act, error, or omission (negligent or not) relating to:
[[Image here]]
“2) the design, specification, construction, workmanship, installation of property;
[[Image here]]
“b. a defect, a weakness, the inadequacy, a fault, or unsoundness in *713 material used in construction or repair whether on or off the insured premises.
“We do pay for an ensuing loss unless the ensuing loss itself is excluded.”
The “water-damage” exclusion in the policy, which, in this case, would be the applicable exclusion referred to in the ensuing-loss provision, states:
“10. Water Damage — We do not pay for loss which results from the following:
“a. flood, surface water, waves, tidal water, overflow of a body of water,, or spray, all whether driven by rain or not;
“b. water which backs up through or overflows from sewers, drains, or sumps; or
“c. water below the surface of the ground. This includes water which exerts pressure on, or seeps or leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.”
In his deposition, Phillips acknowledged that the damage to the interior of his house was not caused by any of the listed perils but ensued from the “faulty roof.” He also acknowledged that coverage for the roofing company’s faulty workmanship was explicitly excluded from the policy; therefore, the cost to replace his roof was not recoverable under the policy. However, Phillips argued, water damage to the interior of his house “ensued” from that faulty workmanship. Therefore, he reasoned, the ensuing-loss provision entitled him to indemnification for the interior damage resulting from the “faulty roof.” Based upon that rationale, Phillips filed a claim for the water damage to the interior of his house.
Judy Hill-Hart, a National Security claims adjuster, went to Phillips’s house and determined that the damage to the house for which Phillips sought coverage did not result from one of the listed perils in the policy. Based upon the findings of the adjuster, National Security denied Phillips’s claim. Phillips then sued National Security alleging claims of breach of contract and bad faith. In the same action, Phillips also sued Global Roofing Company, asserting claims' of negligence and breach of contract arising from the allegedly defective workmanship carried out in replacing the roof on the house.
National Security moved for a summary judgment as to both the claims Phillips had asserted against it. National Security argued that, because the interior damage resulting from water leaking from the “faulty roof’ was not a peril included in the coverage section of the policy, it had properly denied Phillips’s claim. The trial court agreed and granted National Security’s motion for a summary judgment.
The claims against Global Roofing remain pending. Because the summary judgment resolved all Phillips’s claims against National Security and because they believed there was no just reason for delay, Phillips and National Security filed a joint motion for the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The trial court granted the joint motion. Phillips then appealed the summary judgment to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Phillips asserts that the trial court erred in entering, the summary judgment for National Security because, he says, the ensuing-loss provision of the policy grants him coverage for the interior water damage that ensued from the faulty roof. He appears to contend that the ensuing-loss provision renders ambiguous the specific coverage granted in the policy; thus, in light of that provision, he asserts, a jury must *714 determine whether National Security properly denied his claim.
“The standard by which this Court will review a motion for summary judgment is well established:
“ ‘The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R.Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present “substantial evidence” creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12-21-12(d)[,] Ala.Code 1975. Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“‘In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).’”
Payton v. Monsanto Co., 801 So.2d 829, 832-33 (Ala.2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999)).
Our supreme court has recognized that “‘[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide.’” Federated Mut. Ins. Co. v. Abston Petroleum, Inc., 967 So.2d 705, 709 (Ala.2007) (quoting State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 308 (Ala.1999)). As the Slade court stated, if the terms within an insurance policy “‘are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court....’” Slade, 747 So.2d at 308 (quoting McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala.1991)). Because the question of ambiguity is one of law, we must first decide whether the ensuing-loss provision in the policy is ambiguous or unambiguous. If the provision is unambiguous, then we must enforce the terms of the insurance policy as written. Safeway Ins. Co. of Alabama, Inc. v. Herrera, 912 So.2d 1140 (Ala.2005). In Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Insurance Co., 347 So.2d 95 (Ala.1977), our supreme court held that whether a clause in an insurance policy is ambiguous is to be determined by deciding what a reasonable, ordinary person applying for insurance would expect the policy to mean. Furthermore,
“‘the terms of an insurance policy should be given a rational and practical construction. Green v. Merrill, 293 Ala. 628, 308 So.2d 702 (1975). Also, a court cannot consider the language in the policy in isolation, but must consider the policy as a whole. Turner v. United States Fidelity & Guar. Co., 440 So.2d 1026 (Ala.1983).’”
Nationwide Ins. Co. v. Rhodes, 870 So.2d 695, 697 (Ala.2003) (quoting Slade, 747 So.2d at 308-09).
In support of the trial court’s summary judgment, National Security asserts that, because the interior water damage was not *715 the result of any of the perils covered in Phillips’s policy, Phillips cannot recover. Specifically, it argues, Phillips cannot use the ensuing-loss provision to expand the coverage granted in the policy.
The policy that Phillips purchased specifically limited coverage to the ten enumerated perils previously mentioned, which were set forth in the section of the policy titled “Perils Insured Against.” As Hill-Hart, the adjuster, explained, when investigating a claim she first looks to see if the damage for which a claim is made was caused by one of those enumerated perils. If so, she then looks to see if any of the exclusions in the policy are triggered. If, on the other hand, the damage was not caused by one of the listed perils, “there’s nothing more for me to look for.” In other words, according to National Security, to be entitled to indemnification, Phillips first must show that the damage for which he seeks indemnification falls within the scope of losses the policy covers.
As this court recognized in State Department of Insurance v. Gallagher, 622 So.2d 370, 372 (Ala.Civ.App.1993), a “named-perils” policy like the one issued in this case is limited in scope and coverage.
“‘“[I]n the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage.”’ Shrader v. Employers Mut. Cas. Co., 907 So.2d 1026, 1034 (Ala.2005) (quoting St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr., 595 So.2d 1375, 1377 (Ala.1992)). See also Scott v. Board of Trustees of Mobile S.S. Ass’n, 540 So.2d 657, 658 (Ala.1988) (an insurer ‘“may, with the insured’s acceptance, insert as many exclusion clauses in its liability policy as it deems proper and necessary so long as they do not conflict with public policy or the statutory laws of the state’” (quoting Cotton States Ins. Co. v. Diamond Housing Mobile Homes, 430 F.Supp. 503, 506 (N.D.Ala.1977))).”
Continental Cas. Co. v. Pinkston, 941 So.2d 926, 930 (Ala.2006). Phillips does not contend that the policy in any way conflicted with public policy or state law.
Our research revealed no Alabama law on point. However, the Court of Appeals of North Carolina dealt with a similar situation in Alwart v. State Farm Fire & Casualty Co., 131 N.C.App. 538, 508 S.E.2d 531 (1998). In Alwart, the insured discovered that the exterior walls of his house, which were covered with synthetic stucco, were buckling, wrinkling, and bulging. Undisputed testimony indicated that the damage to the walls was the result of improper workmanship or materials used in the installation of the synthetic stucco. The “Perils Insured Against” section of Alwart’s homeowner’s policy stated that his insurer, State Farm Fire & Casualty Co., did “ ‘not insure loss caused by ... settling, cracking, shrinking, bulging, or expansion of ... walls....’” 131 N.C.App. at 539, 508 S.E.2d at 532. In addition, the “Exclusions” portion of the policy specifically excluded coverage for faulty, inadequate, or defective workmanship. However, the policy also contained a provision stating that it would cover any “ ‘ensuing loss’” not excluded or excepted in the policy. Id.
Alwart filed a claim under his policy for the damage to his walls under the theory that the buckling and wrinkling ensued from faulty workmanship and materials, and, therefore, he said, he was entitled to indemnification pursuant to the ensuing-loss provision of his homeowner’s policy. State Farm denied Alwart’s claim on the basis that he could not use the ensuing-loss provision to broaden his initial coverage.
*716 The North Carolina Court agreed with State Farm. Using an example provided by State Farm, the North Carolina court illustrated the coverage contemplated by the ensuing-loss provision. If a policy included coverage for fire damage but excluded water damage, the ensuing-loss provision would nonetheless allow coverage for any water damage that resulted from putting out the fire. The North Carolina court determined that State Farm had properly denied Alwart’s claim, holding that the ensuing-loss provision cannot be used to expand coverage beyond the specific perils the policy insures against. 131 N.C.App. at 541, 508 S.E.2d at 533. “‘[G]iven the placement of the ensuing loss clause in a policy exclusion, it is difficult to reasonably interpret the ensuing loss clause contained in the defective construction and materials exclusion to be a grant of coverage.’” 131 N.C.App. at 542, 508 S.E.2d at 534 (quoting McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 734, 837 P.2d 1000, 1005 (1992)).
In this case, Phillips concedes that the water damage to the interior of his house was not caused by any of the perils the policy insured against, including fire, lightning, windstorms or hail. The policy specifically excluded water damage to the interior of the house or to property inside the house “caused by dust, rain, sand, sleet, snow or water, all whether driven by wind or not, which enter through an opening not made by the direct force of wind or hail.”
Phillips has never claimed that water was leaking into the roof through an opening made by the direct force of wind or hail. Instead, he asserts that he is entitled to indemnification because the interior water damage ensued from faulty workmanship carried out when the roof was replaced. In reading the policy as a whole, as we are required to do, Nationwide Ins. Co. v. Rhodes, supra, we agree with the North Carolina Court of Appeals that the ensuing-loss provision in the exclusions section of the policy cannot reasonably be interpreted to create coverage beyond the perils initially insured against, and the coverage allowed under the ensuing-loss provision is not ambiguous as applied in this case.
Phillips could not have been indemnified for the water damage to the interior of Phillips’s house under one of the perils covered by the policy, and he cannot use the ensuing-loss provision to expand that coverage. Thus, he is not entitled to indemnification pursuant to the policy, and National Security did not breach the terms of the policy by denying his claim for coverage.
In his brief on appeal, Phillips did not raise the issue whether the trial court erred by entering the summary judgment in favor of National Security as to the bad-faith claim. Therefore, that issue is waived. See Tidwell v. Pritchett-Moore, Inc., 12 So.3d 83, 88 (Ala.Civ.App.2008) (“An issue not raised on appeal is deemed waived, and we need not address it.”).
For the reasons set forth above, the judgment of the trial court is affirmed.
AFFIRMED.
BRYAN, THOMAS, and MOORE, JJ., concur.
PITTMAN, J., recuses himself.