# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 21, 2009 Session

## JULIA FISHER, ET AL. v. ASHLEY REVELL, ET AL.

**Direct Appeal from the Circuit Court for Obion County**
**No. 07-CV-140      William B. Acree, Judge**

_____

**No. W2008-02546-COA-R3-CV - Filed September 30, 2009**

_____

This is a summary judgment case, arising from an automobile accident. Plaintiffs/Appellants, the two injured parties, filed suit and served a copy of the summons on their insurance provider, the Appellee herein. In interpreting the policy, the trial court concluded that the policy limits of $100,000 per person and $300,000 per occurrence limited Plaintiffs/Appellants' coverage to $200,000 (or $100,000 per person). Plaintiffs/Appellants appeal, asserting that they are entitled to recover the policy limit of $300,000 per occurrence. We affirm the decision of the trial court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., separately concurred.

Bruce S. Conley, Union City, Tennessee, for the Appellants, Julia Fisher and James Fisher.

Kyle C. Atkins, Terri Smith Crider, Humboldt, Tennessee, for the Appellees, Auto-Owners Insurance Company.

## OPINION

On April 19, 2007, Julia Fisher and her husband Baxter Fisher were involved in an automobile accident with Ashley Revell, who was driving a vehicle owned by Donny Revell. Ms. Revell allegedly ran a stop sign and collided with the Fishers' vehicle.[1] As a result of the injuries he sustained in the accident, Mr. Fisher later died. Mrs. Fisher sustained serious, permanent, and disabling injuries.

---

[1] The Revells are not parties to this appeal.

On October 9, 2007, the Fishers' son, Appellant James Fisher, filed suit as next friend and next-of-kin on behalf of his mother and father against Ashley and Donny Revell.[2] The Fishers served a Summons and copy of the Complaint on their uninsured motorist carrier, Appellee Auto-Owners Insurance Company ("AOI"). The policy included uninsured motorist coverage of $100,000.00 per person and $300,000.00 per occurrence. AOI filed its initial answer on November 14, 2007, which answer was amended on November 21, 2007.

On February 13, 2008, AOI filed a motion for summary judgment. Therein, AOI asserts that, in response to its request for admissions, the Revells "admitted...that they ha[ve] [] policy limits equal to or greater than the Unnamed Defendant's Policy limits." Relying upon Tenn. Code Ann. §56-7-1201(d),[3] AOI asserts that, based upon the Revells' responses to the request for admissions, "there is no ability for Plaintiffs to recover under their own uninsured motorist policy." AOI's motion was heard on July 25, 2008. By Order of September 22, 2008, the trial court granted the motion. On October 17, 2008, the Fishers moved the court to alter or amend its judgment, which motion was denied by Order of October 27, 2008. On November 7, 2008, the trial court entered a second order on the motion to alter or amend. This Order states, in relevant part:

> Pursuant to Rule 54 of the Rules of Civil Procedure, the Court finds that there is no just reason for delay of the entry of an order dismissing the claims against Auto-Owners in that the Court found when ruling on the Defendant's Motion for Summary Judgment that as a matter of law the policy provided maximum coverage of $100,000.00 per person, per accident and that the total coverage available for two people was limited to the per person limit and was a maximum of $200,000.00; and this Order is entered as a final judgment of all claims of the Plaintiffs against Auto-Owners.

James Fisher appeals and raises three issues for review as stated in his brief:

---

[2] The Complaint was later amended to state that James Fisher is the appointed Conservator for his mother, Julia Fisher, and that James Fisher is also the appointed Executor or Personal Representative of the estate of his father, Baxter Fisher.

[3] Tenn. Code Ann. §56-7-1201(d) provides:

> The limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured. With regard to a claim against a governmental unit, political subdivision or agency thereof, the limitations of liability established under applicable law shall be considered as limits collectible under a liability insurance policy.

I. Whether the trial court erred in granting Auto-Owners' Motion for Summary Judgment.

II. Whether the trial court erroneously construed the conflicting terms of the policy in favor of the insurance company.

III. Whether the trial court erroneously held that the coverage in the amount of $300,000 for injuries to two persons was limited by the $100,000 maximum payable to one person.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 926 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

Construction of a contract is particularly suited to disposition by summary judgment. *Raniey v. Stansell,* 836 S.W.2d 117, 119 (Tenn.Ct. App.1992). Therefore, we review the trial court's finding concerning the agreement between these parties *de novo* upon the record with no presumption of correctness accompanying the trial court's conclusions of law. *See* Tenn. R.App. P. 13(d); *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn.Ct.App.1998); *Sims v. Stewart*, 973 S.W.2d 597, 599-600 (Tenn.Ct.App.1998).

It is well settled that the language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. ***Ballard v. North American Life & Casualty Co.***, 667 S.W.2d 79 (Tenn.Ct.App.1983). Provisions in a contract "should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. ***Sutton v. First Nat'l Bank***, 620 S.W.2d 526 (Tenn.Ct.App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, ***Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.***, 884 S.W.2d at 462 (citing ***Oman Constr. Co. v. Tennessee Valley Authority***, 486 F.Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. ***Cookeville P.C.***, 884 S.W.2d at 462 (citing ***Edwards v. Travelers Indem. Co.***, 201 Tenn. 435, 300 S.W.2d 615, 617-18 (1957)). The interpretation of a written contract is a matter of law and not of fact. ***See Rainey v. Stansell***, 836 S.W.2d 117 (Tenn.Ct .App.1992). When interpreting insurance policies the above principles apply. ***Petty v. Sloan***, 227 S.W.2d 355 (Tenn. 1955).

The issue here involves an alleged ambiguity in an insurance contract. In interpreting insurance contracts, we apply, as a general rule, the same rules of construction as are applicable to other types of contracts. ***Phillips v. United Servs. Auto. Ass'n***, 146 S.W.3d 629, 633 (Tenn. Ct. App. 2004). In determining whether an ambiguity exists in a contract, we are guided by the following principles:

> Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract. However, an ambiguity arises in a contract only when contractual terms are susceptible to fair and honest differences, and when both of the interpretations advanced are reasonable.
> A word or expression in the contract may, standing alone, be capable of two meanings and yet the contract may be unambiguous. Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.

77 C.J.S. *Contracts* § 304 (citations omitted). When an ambiguity is found in an insurance policy, it "must be construed strongly against the insurer and in favor of the insured." ***Phillips***, 146 S.W.3d at 633 (*quoting* ***Travelers Ins. Co. v. Aetna Cas. & Sur. Co.***, 491 S.W.2d 363, 366 (Tenn. 1973).

However, "[t]here must be two reasonable constructions of the language before the Court can find ambiguity and construe the policy toward the insured." ***Paul v. Ins. Co. of N. Am.***, 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984).

Here, the dispute between the parties involves the interpretation of following provisions of the Fishers' AOI policy:

DECLARATIONS:

| COVERAGES | LIMITS |
|---|---|
| Bodily Injury | $100,000 ea pers / $300,000 ea occ |
| Property Damage | $100,000 ea occ |
| Uninsured Motorist BI | $100,000 ea pers / $300,000 ea occ |
| Uninsured Motorist PD | $100,000 ea occ ($200 ded) |
| Medical Payments | $ 2,000 ea pers |

\* \* \*

POLICY:

4. LIMIT OF LIABILITY

a. We will pay compensatory damages for bodily injury up to the Limit of Liability stated in the Declarations as follows:

(1) The limit stated for "each person" is the amount of coverage and the most we will pay for all compensatory damages because of or arising out of bodily injury to one person in any one occurrence.

(2) The limit stated for "each occurrence" is the total amount of coverage and the most we will pay, subject to 4.a.(1) above, for all compensatory damages because of or arising out of bodily injury of two or more persons in any one occurrence.

Specifically, the parties disagree as to the "total amount of coverage" for injuries to "two or more" persons. The Fishers assert that the language is ambiguous and that they are entitled to $300,000 under the policy because two people were injured in the accident. AOI asserts that the above language is unambiguous and limits coverage to $100,000 for each person when there is more than one person involved in any one occurrence, and that the maximum recovery is $300,000 per occurrence. The trial court ruled in favor of AOI because it found that the policy was unambiguous.

Our first task is to determine whether the two provisions of the policy are ambiguous.  To do so, we must determine whether there are two reasonable constructions of the above language.  ***See Paul***, 675 S.W.2d at 484.  For their construction, the Fishers rely on the provision in section 4.a.(2) which states that an "occurrence" involves "two or more persons" and that the appropriate limit is therefore $300,000.  However, "to properly construe an agreement, we are not allowed to take words in isolation, but must construe the instrument as a whole."  ***Pitt v. Tyree Org. Ltd.***, 90 S.W.3d 244, 253 (Tenn. Ct. App. 2002).  The Fishers' construction ignores this rule because it does not account for the clause in section 4.a.(2) providing that the section is "subject to 4.a.(1)." AOI offers the more reasonable interpretation that the "subject to" language indicates that section 4.a.(2) is subordinate to section 4.a.(1).  In other words, the $300,000 limit applies in any multiple person accident, but the $100,000 limit still applies to any one individual's claim.

Although not as determinative, the Fishers' construction is also suspect because it produces an anomalous result.  Under their construction, if one person is injured, the maximum recovery is $100,000.  If three people are injured, each person can recover $100,000; and if more than three are injured, the $300,000 limit would preclude any one person from recovering more than $100,000. The Fishers, however, assert that if two persons are injured, each person can recover $150,000.  This construction of the policy thus allows a $150,000 recovery only when two people are involved in an accident.  Contracts, however, often provide for  unusual outcomes, and the Fishers' construction is not necessarily unreasonable as a result.  Their construction is unreasonable because it requires a strained reading of the policy that ignores the critical "subject to" clause in section 4.a.(2).  That this produces an anomalous result is only additional evidence that the Fishers' construction is unreasonable.

Because the Fishers have not offered a reasonable construction of the policy, we find that the policy is not ambiguous.  ***See Paul***, 675 S.W.2d at 484.  AOI, however, has offered a reasonable construction of the agreement that takes all of the policy's provisions into account.  We concede that the policy's use of "two or more persons" in section 4.a.(2) is imprecise and awkwardly drafted.  A contract, however, is not ambiguous simply because it is unclear in parts.  ***See Johnson v. Johnson***, 37 S.W.3d 892, 896 (Tenn. 2001) (finding that a contract, while "not a model of clarity," was unambiguous).  A contract is ambiguous when it is susceptible to two or more reasonable constructions.  The Fishers have not offered a reasonable alternative to AOI's construction of the policy.  Consequently, the trial court did not err in finding that the policy was unambiguous when it granted summary judgment in favor of AOI.

On appeal the Fishers also argue that the use of the term "two or more" in the Tennessee Code Annotated usually means any number of persons more than one.  Specifically, the Fishers cite Tenn. Code Ann. §55-12-102(12)(C)(i)(b) for the proposition that the lower limit of a policy is applicable to injuries to one person, and the higher limit (or maximum) is applicable to accidents involving injuries to two or more persons.  The statute reads, in relevant part:

> (b) A split-limit policy with a limit of not less than twenty-five thousand dollars ($25,000) for bodily injury to or death of one (1)

person, not less than fifty thousand dollars ($50,000) for bodily injury to or death of two (2) or more persons in any one (1) accident, and not less than ten thousand dollars ($10,000) for damage to property in any one (1) accident;

Tenn. Code Ann. §55-12-102(12)(C)(i)(b).[4]

We cannot agree with Appellants' assertion that the Tennessee Code prescribes the number of persons–two or more–that must be injured as a condition of being entitled to higher limits in a split-limit policy. While we agree that, under the above statute, in order for the higher policy limit to apply, two or more persons must be injured (the lower limit would apply where only one person is injured), we cannot go so far as to rule that this statute requires AOI to pay the policy maximum of $300,000 when only two people were injured in this accident.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed to the Appellant, James Fisher, and his surety.

_____
J. STEVEN STAFFORD, J.

---

[4] Appellants also cite Tenn. Code Ann. §§ 55-12-102(12)(A)(i)(b), (B)(i)(b), and (D)(i)(b), which contain the same language as §55-12-102(12)(C)(i)(b).