# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 20, 2022 Session

## LEO CHARLES HILLMANN ET AL.  v. YOUNG STREET PARTNERS II, LLC, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 19-425-IV      Russell T. Perkins, Chancellor**

_____

**No. M2021-00142-COA-R3-CV**

_____

This case involves the interpretation of a commercial lease provision containing a tenant improvement allowance.  Following a hearing, the trial court initially entered an order in August 2020, granting partial summary judgment in favor of the plaintiffs/assignees and directing the defendant/assignor, Young Street Partners II, LLC ("Young Street"), to reimburse the plaintiffs for $92,000.00 they had paid to a tenant claiming the improvement allowance, as well as costs, attorney's fees, and statutory prejudgment interest.  Upon the filing of subsequent competing motions for summary judgment and following a hearing, the trial court confirmed its prior judgment in favor of the plaintiffs and further dismissed Young Street's counterclaim for attorney's fees and costs in an order entered in January 2021, thereby denying Young Street's motion for partial summary judgment.  Following entry of an order of voluntary dismissal without prejudice against all defendants except Young Street and upon the plaintiffs' motion, the trial court entered an order certifying its January 2021 order as final pursuant to Tennessee Rule of Civil Procedure 54.02.  Young Street has appealed.  Determining that the trial court improvidently granted summary judgment in favor of the plaintiffs, we vacate the judgment and remand this matter to the trial court for further proceedings.  We deny the plaintiffs' request for an award of attorney's fees on appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Gregory H. Oakley, Nashville, Tennessee, for the appellants, Young Street Partners II, LLC, and Darwin Melnyk.

Matthew R. Murphy, Nashville, Tennessee, for the appellees, Leo Charles Hillmann and Irene Marie May-Hillmann, acting as trustees for the Hillmann Family Trust.

**OPINION**

I. Factual and Procedural Background

On December 13, 2018, the plaintiffs, Leo Charles Hillmann and Irene Marie May-Hillmann, acting as trustees for the Hillmann Family Trust (collectively, "the Hillmann Trust"), purchased commercial real property located at 810 Royal Parkway in Nashville, Tennessee ("the Property"), via special warranty deed from Young Street. Defendant Darwin Melnyk executed the deed as Young Street's "Sole Member," listing the purchase price as $4,300,000.00. At the time of sale, the Property was occupied by tenants who held leases with Young Street. The Hillmann Trust and Young Street concomitantly entered into an "Agreement of Assignment and Assumption of Leases" ("the Agreement"), wherein Young Street, as assignor, agreed to assign its rights to those leases to the Hillmann Trust, as assignee. The Agreement provides in pertinent part:

> For and in consideration of the covenants and agreements herein made by Assignor and Assignee, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns, transfers and sets over unto the Assignee all of Assignor's right, title and interest, in and to those leases and security deposits described on the Rent Roll attached hereto as Exhibit A and made a part hereof by this reference, third party guaranties thereof, if any, and any amendments thereto (collectively, the "Leases"), pertaining to the real property commonly known as 810 Royal Parkway, Nashville, Tennessee 37214 (the "Real Property") including all rents, rent payments, issues, and profits reserved therein, and any and all cash and non-cash security deposits deposited with the Assignor thereunder.

> Assignee hereby accepts the assignment and transfer made by Assignor pursuant to Paragraph 1 hereof, and in consideration of such assignment, hereby assumes and agrees to perform and observe all of the covenants, agreements and obligations of Assignor under the Leases to the extent arising and to be performed and observed from and after the date hereof.

> Assignor agrees to indemnify, defend, protect and hold Assignee harmless from and against any and all claims (including reasonable attorneys' fees) arising out of or in connection with the Leases (including any security deposit paid thereunder) for the period prior to and including the date hereof. Assignee agrees to indemnify, protect, defend and hold

- 2 -

Assignor harmless from and against all claims (including reasonable attorneys' fees) arising out of or in connection with the Leases from and after the date hereof.

(Paragraph numbering omitted; emphasis added.)

Included in the leases assigned through the Agreement was "Fifth Amendment to Office Lease," entered into by one of the Property's commercial tenants, ADP, LLC ("ADP"), with Young Street on November 24, 2017. A clause in ADP's amended lease provides for $92,000.00 in improvements to the Property, stating as follows:

> **3.    TENANT IMPROVEMENTS.**    Landlord shall provide an improvement allowance of $10.00 per RSF of the Premises, for a total of $92,000.00 ("Tenant Allowance"). Tenant improvements will be based on mutually acceptable design, construction, mechanical and electrical plans to be prepared by Tenant or Landlord (at Tenant's option), utilizing Tenant's standard specifications and finishes, or, if acceptable to Tenant, Landlord's specifications and finishes. Tenant, at Tenant's choice, may have Landlord perform requested tenant improvements, based on a mutually acceptable space plan, or Tenant may elect to perform its own improvements, based on a mutually acceptable space plan. If Tenant elects to perform its own improvements, Landlord shall reimburse Tenant for amounts expended, up to the amount of the Tenant Allowance, within thirty (30) days of presentation of an invoice showing the amounts owed and, if appropriate, lien waiver(s) from the contractor(s) who(m) performed work referenced in the invoices, and/or a copy of the use and occupancy permit (if applicable) issued by the applicable governmental agency. There shall be no management or oversight fee charged by the Landlord if Tenant completes its own work.

On December 11, 2018, two days prior to the closing of the Property's sale to the Hillmann Trust, Young Street was presented with a written demand for payment of $92,000.00 for improvements made pursuant to the tenant improvement allowance ("Tenant Allowance") provided for in ADP's lease. On the morning of December 13, 2018, prior to the closing, ADP presented to the closing attorney, Robert L. Scruggs, a "Tenant Estoppel Certificate," dated December 12, 2018, stating that the Tenant Allowance had not been paid. The Property's sale closed on December 13, 2018, and payment of the Tenant Allowance was not provided for during the closing. Mr. Melnyk executed an "Owner's Affidavit" on the day of closing, stating that he had not received notice of any claims or liens against the Property and that no improvements or repairs had been made "on the Property by or on behalf of Owner during the twelve (12) months immediately preceding the date hereof the bills for which have not been paid in full."

In a letter dated January 28, 2019, the Hillmann Trust, acting through counsel, demanded full payment of the Tenant Allowance from Young Street. The Hillmann Trust subsequently paid $92,000.00 to ADP on February 8, 2019, to avoid defaulting on ADP's lease. Young Street did not reimburse the Hillmann Trust for the Tenant Allowance paid to ADP.

The Hillmann Trust initiated this action by filing a complaint in the Davidson County Chancery Court ("trial court") on March 22, 2019, naming as defendants Young Street; Mr. Melnyk; Mr. Scruggs; Everett Lowe, Young Street's and Mr. Melnyk's real estate agent; and Carolyn Jordan, the Hillmann Trust's real estate agent.[1] As pertinent on appeal, the Hillmann Trust alleged in its complaint against Young Street claims of breach of contract and promissory estoppel (through Young Street's agent, Mr. Lowe) and claims of fraud and/or misrepresentation against Mr. Melnyk in his capacity as owner. The Hillmann Trust further asserted against Young Street and Mr. Melnyk, *inter alia*, a claim of civil conspiracy. The Hillmann Trust requested a judgment in the amount of $92,000.00, reasonable attorney's fees, and litigation costs.

Young Street and Mr. Melnyk (collectively, "Defendants") filed a motion for partial dismissal of the complaint on May 28, 2019, asserting, *inter alia*, that the Hillmann Trust's fraud/misrepresentation, promissory estoppel, and civil conspiracy claims failed to state a claim upon which relief could be granted pursuant to Tennessee Rule of Civil Procedure 12.02(6). The Hillmann Trust filed a response opposing the motion for partial dismissal. In an order entered on July 19, 2019, the trial court, *inter alia*, denied Defendants' motion for partial dismissal.

On November 21, 2019, Defendants filed an answer to the Hillmann Trust's complaint, denying all substantive allegations and asserting affirmative defenses of merger, estoppel, waiver, and accord and satisfaction. Young Street concomitantly filed a counterclaim against the Hillmann Trust, averring that because ADP did not "provide Young Street with the use and occupancy permit and all of the lien waivers prior to the closing, no payment obligation to ADP arose prior to the closing" and that "[i]f any such payment obligation ever arose, it arose and was to be performed after the closing" by the Hillmann Trust. Young Street asserted that "by filing an action against Young Street seeking payment for an obligation that arose after the closing," the Hillmann Trust had breached the Agreement and that pursuant to the indemnification provision contained therein, the Hillmann Trust was responsible for Young Street's reasonable attorney's fees

---

[1] Robert L. Scruggs, Everett Lowe, and Carolyn Jordan were voluntarily dismissed as defendants during the trial court proceedings, and they have not filed briefs on appeal. Accordingly, we will confine our recitation of the factual and procedural background to those facts pertaining to the parties and issues on appeal.

- 4 -

in defending against the complaint. Young Street requested a jury trial as to its counterclaim, reasonable attorney's fees, and prejudgment interest.

The Hillmann Trust filed an answer to Young Street's counterclaim, denying any liability and asserting the affirmative defense of estoppel. On July 13, 2020, the Hillmann Trust filed a motion for partial summary judgment, asserting that there were no genuine issues of material fact concerning the Agreement and that it was entitled as a matter of law to an award of the Tenant Allowance against Young Street in the amount of $92,000.00. The Hillmann Trust contemporaneously filed affidavits and a statement of undisputed material facts in support of the motion. Young Street filed a response in opposition, along with a statement of additional material facts, a declaration from Mr. Melnyk, and other documents.

On August 21, 2020, the trial court conducted a hearing via teleconference regarding the Hillmann Trust's motion for partial summary judgment. In an order entered on August 24, 2020, the court granted partial summary judgment in favor of the Hillmann Trust, directing Young Street to pay the $92,000.00 in reimbursement plus seven percent prejudgment interest pursuant to Tennessee Code Annotated § 47-14-123. Determining that the Hillmann Trust was entitled to its reasonable attorney's fees and expenses pursuant to the terms of the Agreement, the court also directed that the Hillmann Trust could file a motion for same with the court. In determining that Young Street was obligated under the Agreement to pay the Tenant Allowance, the trial court stated in relevant part:

> Summary judgment here turns on whether a claim arising out of or in connection with the Lease occurred and, if so, when. If a claim arose prior to or on December 13, 2018, then [Young Street] is obligated to indemnify the Trust. However, if the claim arose after December 13, 2018, then [Young Street] is not obligated to indemnify the Trust. The Trust argues that, once ADP demanded payment from [Young Street] under the Lease, the claim arose. [Young Street], however, argues that a claim did not arise until ADP satisfied the Lease requirements, thereby triggering an obligation to pay the Allowance. [Young Street] argues that, because ADP allegedly did not satisfy the Lease requirements, no claim arose prior to or on December 13, 2018.

> * * *

> A claim is defined as 1) a legal assertion taken by a person wanting compensation, payment, or reimbursement for a loss under a contract; 2) the amount a claimant demands. *See The Law Dictionary Featuring Black's Law Dictionary Free Online Legal Dictionary* (2d ed.), https://thelawdictionary.org/claim. By letter dated December 7, 2018 to

Micah Williams, the property manager, ADP demanded payment of the $92,000.00 Allowance from [Young Street]. This demand letter included an invoice, as well as the Contractor's Partial Release of the Lien from Thomas Constructors; the Subcontractor's Partial Release of Lien from Cedar Chapel Woodworks, LLC, Enterprise Electric, LLC, Copperhead, Inc., IAC, J & J Interiors, Inc.; and the Subcontractor's Final Release of Lien from Enterprise Electric, LLC, for work referenced in the invoice. Although it is undisputed that [Young Street] was presented with the written demand for payment from ADP on December 11, 2018, the record does not contain a copy of the December 11, 2018 email. Despite this, it is undisputed that the December 11, 2018 email contained ADP's December 7, 2018 demand letter to the property manager and the lien waivers identified above.

When ADP sent its demand letter to the property manager on December 7, 2018, which demand was forwarded to [Young Street] on December 11, 2018, ADP made a claim upon [Young Street] based on Paragraph 3 of the Lease between [Young Street] and ADP. Both the December 7, 2018 and December 11, 2018 dates equate to "the period prior to and including" December 13, 2018.

The parties' bargained-for indemnity agreement is clear and unambiguous. Under it, [Young Street] has an obligation to indemnify the Trust from and against any and all claims arising from the Lease, including attorneys' fees. The Agreement does not differentiate between valid or frivolous claims, timely or untimely claims, or limit the types of claims from which [Young Street] agreed to indemnify the Trust. As stated above, the pertinent issue here is when the claim arose (not when the obligation to pay the claim arose, which is a separate issue), and the claim undisputedly arose on December 7, 2018 (or at the very latest, December 11, 2018), which was a date prior to December 13, 2018. Accordingly, [Young Street] is obligated to indemnify the Trust from the claim pursuant to the parties' Agreement, which claim the Trust paid to ADP in the amount of $92,000.00 on February 8, 2019.

Furthermore, the proof in the record demonstrates [Young Street]'s intent to be bound to ADP's claim for the Allowance under the Lease prior to the closing on December 13, 2018. On December 10, 2018, Ryan Hennessy, ADP Project Manager, sent an email to Karen Hackman of ADP that reads as follows:

Karen, please find attached the lien waivers that support this pay app that was paid in October. I do not know how to get a

- 6 -

copy of the required canceled check, but below is the check number and date.

Also I have the GC's final pay app but it has not been paid yet. Gensler is signing it as we speak, than (sic) I will submit to Tri-Riga for payment. This pay app includes the GC's final lien waivers. **I had mentioned this to the Landlord and they were fine with this as long as we started the process prior to the l2th.**

I know you had requested the TI information in September but we were not complete at that time. **Also the only reason this is a rush is the sale of the building** which I became aware of last week.

Let me know what else you require from me.

It is undisputed that ADP "started the process" by making a claim on [Young Street] prior to December 12, 2018. For the foregoing reasons, [Young Street] is contractually obligated to indemnify the Trust for ADP's claim for payment of the Allowance pursuant to the Lease.

(Footnotes and internal citations to record omitted; emphasis in trial court's order.) Upon the Hillmann Trust's subsequent motion, the trial court entered an order on October 22, 2020, awarding to the Hillmann Trust $14,463.55 in reasonable attorney's fees.

On November 20, 2020, Young Street filed a motion for partial summary judgment on its counterclaim regarding attorney's fees and a motion "to Revise the Court's Order Granting [Partial] Summary Judgment to Plaintiffs," asserting as to the latter that because the August 2020 order was not certified as a final order, it could be revised at any time. In this motion, Young Street relied heavily on this Court's decision in *One Commerce Square, LLC v. AUSA Life Ins. Co.*, No. W2003-02956-COA-R3-CV, 2004 WL 2086324 (Tenn. Ct. App. Sept. 8, 2004). Positing that *One Commerce Square* stands for the proposition that "a claim for a tenant improvement allowance does not arise until payment is actually due," Young Street argued that because all final lien waivers and the use and occupancy permit related to ADP's improvements were not obtained until after closing on sale of the Property, payment was not due for the Tenant Allowance until after closing such that the Tenant Allowance was the Hillmann Trust's obligation rather than Young Street's obligation. Young Street filed a statement of undisputed material facts in support of its motion.

Also on November 20, 2020, the Hillmann Trust filed a motion for partial summary judgment and "for Entry of Final Judgment Dismissing the Claims" of Young

Street, asserting that the trial court should affirm its prior judgment in favor of the Hillmann Trust and therefore dismiss Young Street's counterclaim for attorney's fees. The Hillmann Trust also filed a statement of undisputed material facts. Both sides filed responses opposing the respective motions.

The trial court conducted a hearing on the outstanding motions for summary judgment via teleconference on January 15, 2021.[2] In an order entered on January 21, 2021, the court confirmed its prior partial summary judgment in favor of the Hillmann Trust, finding that Young Street was "obligated to indemnify [the Hillmann Trust] for ADP's claim pursuant to the parties' Agreement, which claim [the Hillmann Trust] paid to ADP in the amount of $92,000.00 on February 8, 2019." The court denied Young Street's motion for partial summary judgment, dismissing its counterclaim for attorney's fees. The court also stated, "under Tenn. R. Civ. P. 54.02, that there is no just reason for delay and hereby directs the immediate entry of final judgment of this Order only with respect to its grant of partial summary judgment to Plaintiffs, dismissing Young Street's Counterclaim against Plaintiffs."

Following entry of an order on February 1, 2021, granting voluntary dismissal without prejudice of the Hillmann Trust's claims against all defendants except Young Street, Young Street filed a notice of appeal on February 11, 2021, concerning the January 2021 order. The Hillmann Trust subsequently filed a motion to certify the trial court's order granting partial summary judgment in its favor as final pursuant to Tennessee Rule of Civil Procedure 54.02. The trial court entered an order granting this motion on March 10, 2021, finding that Young Street had "failed to file any response opposing" the motion. The court thereby awarded to the Hillmann Trust the $92,000.00 Tenant Allowance, their reasonable attorney's fees, and prejudgment interest from December 11, 2018, through August 24, 2020, the date of the original partial summary judgment order's entry. Young Street timely filed an amended notice of appeal on March 22, 2021, stating that it was appealing both the August 2020 and January 2021 orders.

II. Issues Presented

Young Street presents the following issue for this Court's review, which we have restated slightly:

1.      Whether the trial court erred by granting partial summary judgment in favor of the Hillmann Trust and denying Young Street's motion for partial summary judgment.

---

[2] Although irrelevant to this appeal, Mr. Lowe had also filed a motion for summary judgment concerning Young Street's claim against him.

The Hillmann Trust presents the following additional issue seeking relief from this Court:

2. Whether the Hillmann Trust is entitled to an award of attorney's fees on appeal based on the fee-shifting provision contained in the parties' agreement.

### III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis*, *MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of

fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

IV. Propriety of Grant of Partial Summary Judgment in Favor of the Hillmann Trust

Young Street argues that the trial court erred in its grant of summary judgment in favor of the Hillmann Trust upon the court's determination that the Agreement clearly and unambiguously required Young Street to indemnify the Hillmann Trust for their payment of the Tenant Allowance to ADP. According to Young Street, the trial court incorrectly found that Young Street's obligation to pay the claim arose prior to December 13, 2018, because Young Street was presented with an invoice and certain lien waivers at the latest on December 11, 2018. Young Street argues that because final lien waivers and a use and occupancy permit had not been furnished by December 13, 2018, the claim was not yet due and payable.

In this action, the trial court was asked to interpret the provisions of two separate contracts: (1) the Agreement between Young Street and the Hillmann Trust and (2) the lease between ADP and Young Street or, more specifically, the Tenant Allowance provision contained in the lease. As this Court has previously elucidated with respect to issues of contract interpretation:

It is well settled that the language used in a contract must be taken and understood in its plain, ordinary, and popular sense. In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. Provisions in a contract "should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano v. Cleo, Inc*., 995 S.W.2d 88, 95 (Tenn. 1999). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, nor can this Court create an ambiguity where none exists in the contract. The interpretation of a written contract is a matter of law and not of fact.

*Fisher v. Revell*, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009) (other internal citations omitted). Utilizing these rules of contract interpretation, we will review each of the trial court's rulings concerning the respective contracts herein.

### A. Agreement Between Young Street and the Hillmann Trust

Considering first the Agreement's provisions regarding the Hillmann Trust's assumption of the leases and Young Street's indemnification of the Hillmann Trust concerning certain claims, we note that the Agreement contains the following pertinent language:

[The Hillmann Trust] hereby accepts the assignment and transfer made by [Young Street] pursuant to Paragraph 1 hereof, and in consideration of such assignment, hereby assumes and agrees to perform and observe all of the covenants, agreements and obligations of [Young Street] under the Leases to the extent arising and to be performed and observed from and after the date hereof.

[Young Street] agrees to indemnify, defend, protect and hold [the Hillmann Trust] harmless from and against any and all claims (including reasonable attorneys' fees) arising out of or in connection with the Leases (including any security deposit paid thereunder) for the period prior to and including the date hereof. [The Hillmann Trust] agrees to indemnify, protect, defend and hold [Young Street] harmless from and against all claims (including reasonable attorneys' fees) arising out of or in connection with the Leases from and after the date hereof.

(Paragraph numbering omitted; emphasis added.) The Agreement was undisputedly executed by the parties on December 13, 2018.

- 11 -

A contract's language can be deemed ambiguous when "a contractual provision [is] susceptible to more than one reasonable interpretation." *See Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc*., 78 S.W.3d 885, 890 (Tenn. 2002). We agree with the trial court's determination in both its August 2020 and January 2021 orders that the above-quoted language from the Agreement is not ambiguous. As such, we will interpret it as written, giving the words their "usual, natural, and ordinary meaning." *See Fisher*, 343 S.W.3d at 779.

The Agreement explicitly provides that the Hillmann Trust is only constrained to perform any obligations of Young Street under the Property's leases "arising and to be performed and observed" from December 13, 2018, forward. Insofar as the contract utilizes the term, "arising," in conjunction with the phrase, "to be performed and observed," we conclude that the use of "arising" in the subsequent indemnification provisions also should be construed as comporting with the time that the obligation's performance is due. *See Fisher*, 343 S.W.3d at 779 ("Provisions in a contract 'should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract.'") (quoting *Guiliano v. Cleo, Inc*., 995 S.W.2d 88, 95 (Tenn. 1999)). As such, in the provisions outlining the Hillmann Trust's agreement to "indemnify . . . and hold [Young Street] harmless from and against all claims . . . arising out of or in connection with the Leases from and after" December 13, 2018, and Young Street's agreement to indemnify the Hillmann Trust for any claims under the leases "arising . . . for the period prior to and including" December 13, 2018, we conclude that the proper analysis of this provision also requires a determination of when the claim in question was due to be paid in order to determine the "arising" of the claim.

This Court's ruling in *One Commerce Square*, 2004 WL 2086324, is in accord. In *One Commerce Square*, this Court was asked to construe an "Assignment and Assumption of Leases and Security Deposits," much like the Agreement here, which had been executed by the parties in that action in relation to the sale of a commercial property. *Id*. at *1. The agreement of the parties in *One Commerce Square* provided that the buyer would "assume, fulfill, perform and discharge all the various commitments, obligations and liabilities of [the seller] under and by virtue of the Existing Leases hereby assigned, which arise on or after the effective date hereof." *Id*. It further provided that the seller "remain[s] liable for performing and discharging obligations and liabilities relating to Existing Leases for which it was responsible and which arose during [the seller's] ownership of One Commerce Square prior to the date hereof." *Id*. One of the "Existing Leases" contained a tenant improvement allowance providing for two payments by the landlord to the tenant, one which was scheduled and paid before the closing date of the property's sale and a second payment scheduled for a future date some months after the closing. *Id*. at *2.

In determining which party bore liability for the second payment, the *One Commerce Square* Court reviewed the unambiguous language of the parties' assignment agreement, outlined above, as well as the language of the lease in question in order to determine when the obligation to pay arose. *Id*. at *4. The Court determined that because the second payment was not due until March 1, 2000, such that the tenant had no right to payment until that date, the landlord's obligation to pay likewise did not "arise" until that date. *Id*. Therefore, inasmuch as the obligation did not arise until after the date of the parties' assignment agreement, this Court determined that the buyer was responsible for making that payment. *Id*. at *5.

In this action, the Hillmann Trust has agreed to "indemnify . . . and hold [Young Street] harmless from and against all claims . . . arising out of or in connection with the Leases from and after" December 13, 2018, and Young Street has agreed to indemnify the Hillmann Trust for any claims under the leases "arising . . . for the period prior to and including" December 13, 2018. Therefore, we must look to the wording of the lease between Young Street and ADP to determine when the claim or obligation arose or was to be performed. *See One Commerce Square*, 2004 WL 2086324, at *4 (explaining that the underlying contract must be examined to determine when an obligation "arises" or is due to be performed).

### B. Tenant Allowance Provision in Lease

Reviewing the Tenant Allowance, we note that ADP's lease with Young Street provides for $92,000.00 in improvements to the Property, stating as follows:

> **3. TENANT IMPROVEMENTS.** Landlord shall provide an improvement allowance of $10.00 per RSF of the Premises, for a total of $92,000.00 ("Tenant Allowance"). Tenant improvements will be based on mutually acceptable design, construction, mechanical and electrical plans to be prepared by Tenant or Landlord (at Tenant's option), utilizing Tenant's standard specifications and finishes, or, if acceptable to Tenant, Landlord's specifications and finishes. Tenant, at Tenant's choice, may have Landlord perform requested tenant improvements, based on a mutually acceptable space plan, or Tenant may elect to perform its own improvements, based on a mutually acceptable space plan. <u>If Tenant elects to perform its own improvements, Landlord shall reimburse Tenant for amounts expended, up to the amount of the Tenant Allowance, within thirty (30) days of presentation of an invoice showing the amounts owed and, if appropriate, lien waiver(s) from the contractor(s) who(m) performed work referenced in the invoices, and/or a copy of the use and occupancy permit (if applicable) issued by the applicable governmental agency</u>. There shall be no management or oversight fee charged by the Landlord if Tenant completes its own work.

(Emphasis added.)

In its August 2020 order, the trial court made no explicit finding concerning whether the above-quoted provision was ambiguous. Instead, the trial court initially determined that a "claim," as referenced in the Agreement between Young Street and the Hillmann Trust, could be equated fundamentally with any demand for payment, whether the claim was "valid or frivolous" or "timely or untimely." The court determined that a claim was undisputedly presented prior to the December 13, 2018 closing date by virtue of Young Street's receipt of a written demand from ADP for payment of the Allowance on December 11, 2018. The trial court noted that certain partial lien releases were sent with the demand that was received by Young Street on December 11, 2018, and further that Young Street was aware of the demand, as evinced by the email from ADP's project manager stating that he had "mentioned this to the Landlord and they were fine with this as long as we started the process prior to the 12th." According to the trial court, ADP had "'started the process' by presenting a claim to Young Street prior to December 12, 2018," thus demonstrating when the claim arose. The court noted that the question of "when the obligation to pay the claim arose" was a "separate issue," as was the question of whether final lien waivers and a use and occupancy permit had to be attached to the claim.

Young Street responded by filing a motion seeking, *inter alia*, "to Revise the Court's Order Granting [Partial] Summary Judgment to Plaintiffs," relying on this Court's decision in *One Commerce Square*, 2004 WL 2086324, and arguing that *One Commerce Square* stands for the proposition that "a claim for a tenant improvement allowance does not arise until payment is actually due." Young Street argued that because all final lien waivers and the use and occupancy permit related to ADP's improvements were not obtained until after closing on sale of the Property, payment was not due for the Tenant Allowance until after closing, such that the Tenant Allowance was the Hillmann Trust's obligation rather than Young Street's obligation.

The trial court subsequently entered its January 21, 2021 order, denying Young Street's motion for summary judgment with regard to its counterclaim for attorney's fees and confirming the court's earlier grant of partial summary judgment to the Hillmann Trust, ordering Young Street to indemnify the Hillmann Trust for its payment of the $92,000.00 Tenant Allowance. Specifically concerning Young Street's argument based on its reading of *One Commerce Square*, the trial court stated in its order:

> In *One Commerce Square, LLC*, an assigned lease provided for a tenant improvement allowance to be paid to the tenant by the landlord in two installments, the first being due on February 9, 1995 and the second on March 1, 2000. *See id.* at *2. The first installment payment was due prior to the sale of the property; however, the second installment was due after the sale of the property. The defendants paid the first installment, but did

- 14 -

not pay the second installment, taking the position that the obligation to pay the second installment arose after the sale of the property. Plaintiff paid the second installment payment to the tenant and sued Defendant for indemnification.

The Court of Appeals held:

Turning to the Amendment, Paragraph 9(a) thereof (see footnote 1 supra) specifically gives Glankler the right to receive two separate payments for tenant improvements. However, those payments are neither due upon the completion of the tenant improvements, nor are they payable at AUSA's discretion. Rather, the plain language of the Amendment specifies that payment one is due "on February 9, 1995" and payment two is due "on March 1, 2000." The cardinal rule in construing contracts is to ascertain the intent of the parties. *Walker v. Tennessee Farmers Mut. Ins. Co.*, 568 S.W.2d 103 (Tenn. Ct. App. 1977). Here, that intent is clear—Glankler had no right to payment one until February 9, 1995 because AUSA had no obligation to pay until that date; likewise, Glankler had no right to payment two until March 1, 2000 because AUSA had no obligation to pay until that date. Under the plain and unambiguous language of this Amendment, the only way we could impose an obligation upon AUSA to pay the second improvement allowance before the March 1, 2000 date would be if no specific date had been written into the contract. In that case, this Court could have applied a reasonable time standard in determining when AUSA should be obligated to make the second payment to Glankler. However, this Court cannot make a contracts (sic) for the parties but can only enforce the contract that the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830 (1950). Since AUSA and Glankler specified the dates for payment, we cannot undermine their intent by imposing an arbitrary obligation on AUSA to pay the second payment prior to March 1, 2000, when, under the plain language of the Amendment, that obligation arose.

*Id.* at *4.

Here, there is no date specified for payment of the Allowance. Rather, the Lease provides that the tenant shall be reimbursed ***within thirty***

- 15 -

***days*** of presentation of an invoice showing the amounts owed and, if appropriate, lien waivers and/or a copy of the use and occupancy permit. Thus, the Allowance was payable at [Young Street]'s discretion within the thirty-day period commencing, at the latest, on December 11, 2018. Because there was no specific date provided for in the Lease for payment of the Allowance, *One Commerce Square, LLC* is distinguishable from the facts of this case. Moreover, noteworthy is the language from *One Commerce Square, LLC* itself: "[T]he only way we could impose an obligation *upon* [*Defendant*] to pay the second improvement allowance before the March 1, 2000 date would be *if no specific date had been written into the contract.*" *One Commerce Square, LLC*, 2004 WL 2086324, at *4 (emphasis added). As aforestated, the Lease here does not provide for a specific date for payment of the Allowance.

In *One Commerce Square, LLC*, the indemnity clause therein was limited to claims or losses that arose prior to the effective date of the parties' agreement ***and*** as a result of assignor's obligations under the leases. *See id.* at *1. Here, pursuant to Paragraph 2 of the Agreement, [the Hillmann Trust] agreed to assume [Young Street]'s obligations that both arose and were to be performed after December 13, 2018, the date of sale. As stated above, ADP's claim arose prior to the sale. <u>Because [Young Street] was presented with an invoice and lien waivers at the latest on December 11, 2018, [Young Street]'s obligation to pay the claim also arose prior to December 13, 2018</u>. Thus, [Young Street] is obligated to indemnify [the Hillmann Trust] for their payment of the Allowance to ADP. This result is also consistent with *One Commerce Square, LLC*, as [Young Street] could pay the Allowance claim at its discretion. *See One Commerce Square, LLC*, 2004 WL 2086324, at *4 ("[T]he only way we could impose an obligation *upon* [*Defendant*] to pay the second improvement allowance before the March 1, 2000 date would be *if no specific date had been written into the contract.*") (emphasis added).

The parties' bargained-for indemnity agreement is clear and unambiguous. Under it, [Young Street] has an obligation to indemnify the Trust from and against any and all claims arising from the Lease, including attorneys' fees.

(Footnotes and internal citations to record omitted; underlined emphasis added.) By footnote, the trial court noted that "an invoice and all final lien waivers, as well as the use and occupancy permit, were obtained" "prior to [the Hillmann Trust's] payment to ADP of the [Tenant Allowance]," which payment the court found to have occurred on February 8, 2019, approximately two months following the closing. The court again

- 16 -

made no specific finding concerning whether the language respecting payment in the Tenant Allowance portion of ADP's lease was ambiguous.

As this Court has previously explained, "[o]ur first task when construing a contract is to determine whether its language is ambiguous." *Dog House Invs., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 913 (Tenn. Ct. App. 2014). We reiterate that a contractual term may be determined to be ambiguous when it is "susceptible to more than one reasonable interpretation." *See Planters Gin Co.*, 78 S.W.3d at 890. This Court has clarified:

> Ambiguity does not arise "'merely because the parties may differ as to interpretations of certain of its provision[.]'" *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001) (quoting *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994)). Rather, "[a] contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.'" *Planters Gin*, 78 S.W.3d at 890 (quoting *Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190-91 (Tenn. 1973)).

*Dog House Invs.*, 448 S.W.3d at 913.

As previously referenced, the Tenant Allowance contained in the lease between ADP and Young Street states in relevant part:

> Landlord shall reimburse Tenant for amounts expended, up to the amount of the Tenant Allowance, within thirty (30) days of presentation of an invoice showing the amounts owed and, if appropriate, lien waiver(s) from the contractor(s) who(m) performed work referenced in the invoices, and/or a copy of the use and occupancy permit (if applicable) issued by the applicable governmental agency.

Upon review, we conclude that the above-quoted language is susceptible to more than one reasonable interpretation and is, therefore, ambiguous. In reaching this conclusion, we note that the trial court found that the claim in question was due and payable upon ADP's presentation to Young Street of "an invoice and lien waivers at the latest on December 11, 2018." However, Young Street argues that the Tenant Allowance required presentation of an invoice along with lien waivers <u>and</u> a copy of the use and occupancy permit. We conclude that either interpretation is reasonable here. Due to utilization of the conjunctive/disjunctive "and/or," equally reasonable is the interpretation that presentation of an invoice and a copy of the use and occupancy permit would render the claim payable within thirty days. Furthermore, no explanation is provided in the Tenant Allowance concerning what circumstances would render the lien waivers "appropriate"

- 17 -

or the use and occupancy permit "applicable." As such, the language utilized in the Tenant Allowance with respect to when the claim is due and payable is simply unclear.

Having determined the contractual provision at issue to be ambiguous, certain precepts apply. As this Court has observed:

> Upon determining that a contract is ambiguous, the court must apply established rules of construction to determine the intent of the parties. Tennessee courts adhere to the general rule that ambiguities in a contract are construed against the drafter. It is well-settled that parol evidence regarding "the relations existing between the parties, the facts surrounding them at the time when they entered into the agreement, and also their acts subsequent thereto" may be considered by the court when interpreting an ambiguous contractual provision. *Faulkner v. Ramsey*, 178 Tenn. 370, 158 S.W.2d 710, 711 (1942).

> When a contract is determined to be ambiguous after application of the rules of construction, then the interpretation of the contract becomes a question of fact for the finder of fact. *Planters Gin*, 78 S.W.3d at 890.

*Dog House Invs.*, 448 S.W.3d at 913 (other internal citations omitted). In the instant action, the trial court made no determination concerning the ambiguity of the Tenant Allowance and thus did not proceed to consider the intent of the parties concerning that provision.

Following our thorough review, we conclude that the trial court erred by (1) failing to determine that the Tenant Allowance provision was ambiguous and (2) failing to follow the above principles to determine the intent of Young Street and ADP concerning the Tenant Allowance in their lease. We reiterate that the Tenant Allowance is required to be properly construed in order to determine when the claim was payable so that a determination may be made concerning when the claim arose for purposes of settling the issues under the parties' Agreement. Accordingly, we vacate the trial court's grant of partial summary judgment in favor of the Hillmann Trust based on the court's interpretation of the Agreement, and we remand this issue to the trial court for further proceedings consistent with this opinion.

## V. Young Street's Counterclaim

Although Young Street has raised an issue concerning whether the trial court erred by denying its motion for partial summary judgment, Young Street has presented no argument concerning this issue in the argument section of its appellate brief. Ordinarily, this would render the issue waived. *See* Tenn. R. App. P. 27(a)(7)(A); *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) ("The failure of a party to cite to

any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue."); *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("[W]hen a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived."). This Court would be unable to reach this issue in any event, however, because the trial court must first make a determination concerning the intent of Young Street and ADP with respect to the Tenant Allowance in their lease before a determination could be made concerning whether the Agreement was breached by either Young Street or the Hillmann Trust. All such issues must be addressed by the trial court upon remand.

## VI. Attorney's Fees on Appeal

Finally, the Hillmann Trust asserts that they should receive an award of attorney's fees on appeal based on the fee-shifting provision contained in the Agreement. The basis of such an award of fees, however, is dependent upon resolution of the issue of whether Young Street was obligated to indemnify and defend the Hillmann Trust from ADP's claim. Until the trial court properly performs an analysis of that issue, as outlined in this Opinion, and makes a determination concerning whether Young Street is liable pursuant to the Agreement, an award of fees would be improper.

## VII. Conclusion

For the foregoing reasons, we determine that the trial court erred by granting partial summary judgment in favor of the Hillmann Trust without finding an ambiguity in the Tenant Allowance and then ascertaining the intent of Young Street and ADP concerning the Tenant Allowance in their lease in order to determine when that claim was due and payable. We therefore vacate the trial court's judgment and remand this matter to the trial court for further proceedings consistent with this opinion. Because the Hillmann Trust's request for attorney's fees on appeal is dependent upon resolution of the underlying claim, we deny that request. Costs on appeal are assessed one-half to the appellants, Young Street Partners II, LLC, and Darwin Melnyk, and one-half to the appellees, Leo Charles Hillmann and Irene Marie May-Hillmann, acting as trustees for the Hillmann Family Trust.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE