STEPHEN ALWART AND PHYLLIS ALWART, PLAINTIFFS-APPELLANTS V. STATE FARM FIRE AND CASUALTY COMPANY, DEFENDANT-APPELLEE

No.COA98-38

(Filed 1 December 1998)

**Insurance— coverage—synthetic stucco damages—ensuing loss**

The trial court correctly granted summary judgment for defendant in an action seeking damages for defendant's refusal to provide coverage under a homeowner's policy for synthetic stucco damages. Applying the precedent established in *Smith v. State Farm Fire and Casualty Co.*, 109 N.C. App. 77, and the Court of Appeals' own reading of the policy language, the policy in this case not only excluded the cost of repairing the faulty construction, workmanship and materials, but also the cost of repairing the "ensuing loss," whether direct or indirect, caused by the faulty construction, workmanship, and materials.

Appeal by plaintiffs from an order entered 10 November 1997 by Judge James D. Llewellyn in New Hanover County Superior Court. Heard in the Court of Appeals 17 September 1998.

*Lea, Clyburn & Rhine, by Joel R. Rhine; Block, Crouch, Keeter & Huffman, L.L.P., by Auley M. Crouch, III; and The McLeod Law Firm, P.A., by Joe McLeod for plaintiffs-appellants.*

*Bailey, Way & Jerzak, by Jennifer S. Jerzak for defendant-appellee.*

HUNTER, Judge.

Plaintiffs purchased a homeowner's policy from State Farm Fire and Casualty Company (State Farm) insuring plaintiffs' dwelling, other structures, personal property, and loss of use. During the period of coverage, plaintiffs discovered damage to their home which manifested itself through buckling, wrinkling, and bulging of the exterior wall surface. The residence was covered with an Exterior Insulation and Finish System (EIFS), also known as "synthetic stucco." Expert opinion, which was not refuted, stated that the damage was caused by contractor error and improper workmanship or products/materials in the installation of the EIFS system. Plaintiffs filed a claim under their policy with State Farm claiming that all "ensuing losses" resulting from the faulty, inadequate, or defective workmanship should be covered by their policy. State Farm denied coverage on the grounds that the damage resulted from causes specifically excluded under the policy. The denial letter relied on policy exclusions in "Section I—Perils Insured Against," subsection 2(f), which states "we do not insure loss caused by . . . settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings" and "Section I—Exclusions," subsection 2(c), which states:

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered . . . .

 c. Faulty, inadequate or defective:

 1. planning, zoning, development, surveying, siting;

 2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

3. materials used in repair, construction, renovation or remodeling; or

4. maintenance[.]

Plaintiffs filed a complaint against defendant on 30 July 1996 seeking damages for defendant's refusal to provide coverage under their homeowner's policy. State Farm's motion for summary judgment was granted and from that order plaintiffs appeal.

At the outset, we note that "[i]n interpreting the relevant provisions of the insurance policy at issue, we are guided by the general rule that in the construction of insurance contracts, any ambiguity in the meaning of a particular provision will be resolved in favor of the insured and against the insurance company." *Smith v. State Farm Fire and Casualty Co.*, 109 N.C. App. 77, 79, 425 S.E.2d 719, 720 (1993) (citation omitted). However,

[n]o ambiguity . . . exists unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend. If it is not, the court must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policy holder did not pay.

*Id.* (citations omitted). This is true even though "[e]xclusionary clauses are not favored and must be narrowly construed." *Id.*

Plaintiffs rely on this Court's rules of policy interpretation outlined in *Smith* to support their contention that although "ensuing losses" resulting directly from defective workmanship are excluded from policy coverage, the "ensuing losses" which are an indirect consequence of defective workmanship are covered. Plaintiffs argue the term "ensuing losses" is either ambiguous with regard to indirect damages and should be liberally construed in their favor, or is unambiguous and should be strictly construed and limited as an exclusion. An example of an indirect loss offered by plaintiffs for clarification is the water damage resulting from the defective flashing which was a direct consequence of faulty workmanship. In plaintiffs' example, the water damage is covered as an indirect loss and the replacement of the defective flashing is not covered.

State Farm's counter position is that faulty workmanship and losses resulting from it are specifically excluded from the policy and

the purpose of the "ensuing loss" clause, also in the section outlining exclusions, is "not to create new coverage but to further define what is covered." State Farm contends that when the policy covers a certain kind of loss the loss will be covered in whatever forms it takes, whether it is a direct or an "ensuing loss." On the other hand, if the loss is "excluded or excepted," as is faulty workmanship, it is never covered, either directly or indirectly. State Farm illustrates a type of "ensuing loss" which is covered by the policy in an example of coverage for losses from fire. While the policy excludes water damage in some instances, the "ensuing loss" clause provides coverage for water damage from putting out the fire. Since loss from fire is covered, "ensuing losses" from the fire are also covered, despite the fact that water damage may be excluded in another form under the policy.

The specific State Farm policy language in question states that "any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered," and is the identical language reviewed by this Court in *Smith. Id.* The plaintiffs in *Smith* were having their kitchen tile replaced and, in the process of ripping off the old tile, the workman used a sander to remove residue from the plywood floor. The residue contained asbestos which was spread throughout the house. The plaintiffs filed a claim on their homeowner's policy for the cleanup of their home and stated that the "workmanship" exclusion was inapplicable to their claim "because [they] [were] seeking to recover only for their ensuing losses and not for any loss directly due to the defective workmanship." *Id.* at 80, 425 S.E.2d at 720. State Farm was granted summary judgment and on appeal this Court held that "[a] common sense reading of that [exclusions] language reveals that the first paragraph of the disputed exclusion means that State Farm's policy does not provide coverage for property loss caused by any event listed . . . . However, the policy *does provide coverage for any ensuing loss* . . . which is not excluded." *Id.* at 81, 425 S.E.2d at 720. The Court also agreed with State Farm's contention that "[t]he exclusion obviously contemplates that the person or company performing the faulty or negligent work should be the ones (sic) responsible for any resulting damages (sic)." *Id.* at 81, 425 S.E.2d at 720-721.

Similarly to the Smiths, the Alwarts claim their damages "were indirect or 'ensuing' losses resulting from the faulty and defective installation of the exterior components on their home." However, plaintiffs claim their case can be differentiated from *Smith* in that damages in *Smith* were direct damages, while plaintiffs' damages are

"ensuing losses" resulting from indirect damages. We find this argument unconvincing as the Court in *Smith* did not limit their holding to "ensuing losses" directly resulting from the faulty workmanship but stated that "the exclusion does not itself make[] a distinction between losses directly due to defective workmanship and those losses ensuing from such defective workmanship . . . ." *Id.* at 82, 425 S.E.2d at 721.

Applying the precedent established in *Smith* and our own reading of the policy language, we hold that the policy in this case not only excluded the cost of repairing the faulty construction, workmanship, and materials, but also the cost of repairing the "ensuing loss," whether direct or indirect, caused by the faulty construction, workmanship, and materials. As noted by the Washington State Supreme Court in a case also interpreting "ensuing loss" coverage, "[g]iven the placement of the ensuing loss clause in a policy exclusion, it is difficult to reasonably interpret the ensuing loss clause contained in the defective construction and materials exclusion to be a grant of coverage." *McDonald v. State Farm Fire and Cas. Co.*, 837 P.2d 1000, 1005 (Wash. 1992). There are parties who can be held responsible for the damage which occurred to plaintiffs' home and, as in *Smith*, plaintiffs may pursue those avenues of recovery.

The trial court's granting of summary judgment in favor of the defendant State Farm is

Affirmed.

Judges McGEE and SMITH concur.