IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2003 Session

# CHARLES C. PHILLIPS, JR., ET AL. v. UNITED SERVICES AUTOMOBILE ASSOCIATION

Appeal from the Chancery Court for Knox County
No. 150930-2     Daryl R. Fansler, Chancellor

**Filed March 24, 2004**

---

**No. E2003-00850-COA-R3-CV**

---

Charles C. Phillips, Jr. sued United Services Automobile Association ("USAA") under his homeowners insurance policy. His suit was prompted by USAA's denial of coverage for water damage to the plaintiff's house. The plaintiff claims that the damage was due to water seepage as a direct result of the faulty design or negligent installation of the synthetic stucco system applied to the exterior of his house. The plaintiff amended his complaint, seeking class certification for all other USAA insureds who had sustained similar losses caused by the failure of synthetic stucco material and whose claims had been denied by USAA. Following a bench trial on the issues of coverage and class certification, the trial court determined that the plaintiff's policy provided coverage for the water damage that ensued as a result of water penetrating the stucco exterior. In addition, the trial court ordered that a class of plaintiffs be conditionally certified. USAA appeals the finding of coverage. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Donald D. Howell, Knoxville, Tennessee, and H. Michael Bagley and Karen K. Karabinos, Atlanta, Georgia, for the appellant, United Services Automobile Association.

Janet L. Hogan, Knoxville, Tennessee, for the appellees, Charles C. Phillips, Jr., on behalf of himself and all others similarly situated in the State of Tennessee.

**OPINION**

I.

In 1999, an inspection of the plaintiff's house revealed the presence of water behind the Exterior Insulation and Finish System ("EIFS"), which is a form of synthetic stucco that had been applied to the exterior of the plaintiff's house. The water had damaged areas of the house located directly behind the EIFS. The plaintiff requested USAA to provide coverage for the water damage under his homeowners policy.[1] USAA advised the plaintiff that the water damage was not covered under his policy because EIFS was involved.

The plaintiff insisted that a USAA representative inspect the house as a prelude to the filing of a formal claim for his loss. An adjuster from USAA inspected the exterior of the house but did not conduct any testing of the EIFS, which testing would have been necessary to determine whether there was water damage behind the EIFS. The adjuster informed the plaintiff that he did not think USAA would cover his loss. In late October, 1999, the plaintiff received a letter from USAA denying his claim. The letter explained that the denial was due to the fact that "rot damage is not within the coverage of your Homeowners Insurance Policy."

Because his claim was denied, the plaintiff paid to have the EIFS removed. The plaintiff and his experts testified at trial regarding the extent of the water damage. They stated that parts of the house behind the EIFS were warped, mildewed, wet, delaminated, and rotted. Photographs of the damage were introduced at trial.

At the conclusion of the bench trial, the court held that the plaintiff had established the existence of water damage; that such water damage was covered under the terms of the policy; and that the exception under the policy to "wet rot" did not preclude coverage for water damage, since, according to the trial court, water damage and rot are separate perils. From this judgment, USAA appeals.

II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

---

[1] The plaintiff did not seek coverage for damage to the EIFS itself.

The pertinent provisions of the homeowner's insurance policy at issue in this case are as follows:

**DEFINITIONS**

\* \* \*

Certain words and phrases are defined and are printed in boldface when used.

\* \* \*

**5. "occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. **bodily injury;** or

b. **property damage**.

\* \* \*

**SECTION I – PROPERTY COVERAGES**

\* \* \*

**ADDITIONAL COVERAGES**

\* \* \*

2. **Reasonable Repairs**. In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

\* \* \*

**SECTION I – PERILS INSURED AGAINST**

**COVERAGE A – DWELLING** . . .

* * *

*We insure against risks of direct, physical loss to property described in Coverage[] A . . .; however, we do not insure loss:*

* * *

**2.** caused by:

* * *

e. constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

**3.** caused by or consisting of:

* * *

c. smog, rust, or other corrosion, mold, *wet* or dry *rot*;

* * *

**4**. excluded under SECTION 1 – EXCLUSIONS.

*Under items 2 and 3, any ensuing loss to property described in Coverage[] A . . . not excluded or excepted in this policy is covered.*

* * *

**SECTION I - EXCLUSIONS**

**1.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

* * *

**c. Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) water which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

* * *

**2.** We do not insure for loss consisting of any of the following. Nor do we insure for loss that results when one or more of the following combines with other causes, events or conditions that are also excluded or excepted in this policy. However, any loss that ensues from the following, that is not otherwise excluded or excepted is covered.

**a. Weather Conditions.**

**b. Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

**c. Faulty, negligent, inadequate or defective:**

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) materials used in repair, construction, renovation or remodeling; or

(4) maintenance;

of part or all of any property whether on or off the **residence premises.**

(Capitalization and bold type in original) (emphasis added).

IV.

USAA's sole issue on appeal is whether the trial court erred in holding that coverage existed under the plaintiff's policy for damage to the plaintiff's residence caused by water penetrating the EIFS material.

In interpreting contracts of insurance, we must, as a general rule, apply the same rules of construction as are applicable to other types of contracts. *See McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). Such contracts are to be interpreted as they are written – absent any fraud or mistake – and their terms must be given their plain and ordinary meaning. *Swanson v. Mid-South Title Ins. Corp.*, 692 S.W.2d 415, 419 (Tenn. Ct. App. 1984). The law is well-settled in this state that any uncertainties or ambiguities in an insurance policy "must be construed strongly against the insurer and in favor of the insured." *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 366 (Tenn. 1973). The interpretation of a contract presents a question of law for the court. *Union Planters Corp. v. Harwell*, 578 S.W.2d 87, 92 (Tenn. Ct. App. 1978).

We begin our analysis by noting that the plaintiff's insurance policy, under the section entitled "Perils Insured Against," broadly insures "against risks of direct physical loss to [the plaintiff's dwelling]." This broad grant of coverage, which obviously would cover water damage, is then immediately followed by a list of exceptions to coverage. One of those exceptions is the "constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance." Another exception is "smog, rust, or other corrosion, mold, wet or dry rot."

Following the list of exceptions is a section entitled "Exclusions." Among the items excluded from coverage under the policy is water damage *as defined in the exclusions*. Water damage is defined in three separate and distinct ways: (1) flood damage; (2) sump pump or sewer back-up damage; and (3) water damage from below the surface of the ground. It goes without saying that none of these "water damage" exclusions pertain to the type of water damage present in the instant case. In addition, the policy excludes "[f]aulty, negligent, inadequate or defective . . . design, specifications, workmanship, repair, construction, . . . materials used in repair, [or] construction . . . ." However, any *loss ensuing from* such faulty workmanship or construction is covered, provided it is not excepted or excluded elsewhere in the policy.

Based upon these exceptions and exclusions, USAA argues that the faulty workmanship associated with the EIFS is specifically excluded from coverage. Furthermore, USAA advances the position that the rot damage to the house beneath the EIFS is excepted from coverage under the "wet or dry rot" exception. The plaintiff counters that he is not seeking coverage for the faulty workmanship of the EIFS but rather for the water damage that *ensued* from the faulty workmanship associated with the EIFS. Hence, according to the plaintiff, the *water damage* behind the EIFS is covered under the policy.

We must first determine whether the water damage suffered by the plaintiff falls within the coverage specified in the policy. The only reference to "water damage" in the list of exceptions in the "Perils Insured Against" section of the policy is to the constant seepage or leakage of water from various sources. We agree with the significant finding of the trial court that, as no other types of water damage are excepted, the implication is that "any other type of *water damage* is covered" as a peril covered under the broad coverage language of the policy (emphasis added). Because the water damage to the plaintiff's residence does not fall under the limited exceptions stated, we turn to the exclusions listed in the policy to determine if it is excluded in those provisions. As previously mentioned, there are three types of water damage that are excluded from coverage: flooding, sewer back-up, and water below the ground. The plaintiff's house was damaged by water penetrating the EIFS. This sort of damage is neither expressly excepted nor excluded under the policy. Accordingly, we find that the policy does provide coverage for the plaintiff's water damage.

We must now determine whether, as USAA contends, the plaintiff's coverage for water damage is barred by the presence of wet rot, which is excepted under the policy. Turning again to the exceptions set forth in the policy, we note, as the trial court did, that several different types of "perils" are excepted. These perils include, among many others, freezing of plumbing, heating, and air conditioning systems; theft with respect to a house under construction; water damage; and "smog, rust, or other corrosion, mold, wet or dry rot." The peril of water damage is a completely separate lettered exception from the peril of wet rot, which is mentioned along with smog, rust and mold. While numerous terms are defined in the policy, there is no definition of the term "rot." However, it stands to reason that wet rot would typically arise out of water damage. This court has previously held that an insurer "will not be permitted to *specifically* provide coverage for an event and then take it away in the *general* language of the policy." **Solomon v. Hager**, No. E2000-02586-COA-R3-CV, 2001 WL 1657214, at *8 (Tenn. Ct. App. E.S., filed December 27, 2001) (emphasis in original). We find that USAA has attempted to maintain such an inconsistent position in the instant case by providing coverage for water damage and then attempting to remove coverage for such water damage by relying upon a generally-worded "wet rot" exception. We agree with the logic of the trial court:

> These [*i.e.*, water damage and wet rot] are separate perils. What we have here is rot that has resulted from the peril, water damage. There is nothing that excludes this type of damage in this policy.
>
> *   *   *
>
> I don't see rot listed in the Exclusions anywhere. Had rot been listed in the Exclusions section of this policy, then arguably, [USAA] could come in and say, sure, you have got covered water damage, but we exclude rot caused by any damage, and that's not what it says. It says we give you coverage for water damage. And it then goes and excludes certain types of water damage, but it does not exclude water damage that results in rot. So, therefore, the Court holds that there is

coverage for the ensuing water damage resulting from the installation of this EIFS system.

We find it interesting, as did the trial court, that an internal memo of USAA instructs its employees that "[w]here mold is present in the area of a covered water loss, we will pay for remediation of the mold in the area directly affected by the covered water damage." The memo further instructs that when "water damaged building materials" have been "compromised," the part of the residence that has been affected should be "remove[d] and replace[d]." Mold is mentioned in the same exception that addresses rot, yet USAA maintains that rot resulting from water damage is not covered under the policy, whereas mold resulting from water damage is covered. We resolve this ambiguity in favor of the insured, *i.e.*, in favor of coverage. *See Travelers Ins. Co.*, 491 S.W.2d at 366.

USAA relies upon several cases from other jurisdictions in support of its position that the plaintiff's water damage is excluded from coverage. However, each of these cases is distinguishable from the instant case. In *Aetna Cas. & Sur. Co. v. Yates*, 344 F.2d 939 (5th Cir. 1965), the plaintiffs experienced rot due to the condensation of moisture in the crawl space under their house. *Id.* at 940. Rot was specifically excluded under the terms of the plaintiffs' policy; however, the exclusion for rot was inapplicable if the rot was caused by water damage. *Id.* at 940-41. The court, in upholding Aetna's denial of coverage, held that the rot was caused not by "the direct intrusion of water," which would amount to water damage, but by the presence of moisture. *Id.* at 941. In the instant case, the damage to the plaintiff's house *was* caused by the *direct* intrusion of water into the house, which is not excluded under the policy.

Similarly, the cases of *80 Broad St. Co. v. United States Fire Ins. Co.*, 389 N.Y.S.2d 214 (N.Y. Sup. Ct. 1975), *Merrimack Mut. Fire Ins. Co. v. McCaffree*, 486 S.W.2d 616 (Tex. App. 1972), and *Park v. Hanover Ins. Co.*, 443 S.W.2d 940 (Tex. App. 1969), are factually distinct from the case at bar. The plaintiff in *80 Broad Street* made a claim for the buckling of the marble facade of his building caused by, *inter alia*, faulty construction and years of moisture seepage. *Id.* at 215. The court found that the provisions in the plaintiff's policy for "wear and tear, deterioration," and "inherent or latent defect" excluded coverage. In *Merrimack*, the plaintiffs' negligently-installed shower stall resulted in rot, mold, fungi and termites. *Id.* at 617-18. The insurance policy specifically excluded damage caused by rot, mold, fungi and termites, unless the ensuing loss was caused by water damage. *Id.* at 618-19. The court held that the loss was not caused by water damage, but rather by the aforementioned excluded factors. Finally, in *Park*, the house in question was damaged after a broken water line caused water below the ground to shift the house's foundation. *Id.* at 940. The plaintiffs' insurance policy contained language almost identical to the policy language in the instant case, which excluded coverage for losses caused by water below the surface of the ground. *Id.* at 941. In each of these cases, the damage was caused by something other than the type of water damage in the case at bar. Accordingly, USAA's reliance on these cases is misplaced.

Another line of cases relied upon USAA is distinguishable from the instant case in light of the policy language. In ***Fiess v. State Farm Lloyds***, No. Civ.A. H-02-1912, 2003 WL 21659408 (S.D. Tex., filed May 20, 2002), the plaintiff sustained mold damage to his residence. ***Id.*** at *1. Mold was specifically excluded from coverage under the plaintiff's insurance policy. ***Id.*** at *6. The policy went on to state, within the mold provision, that an ensuing loss caused by water damage was covered unless such loss was otherwise excluded. ***Id.*** Likewise, in ***Schloss v. Cincinnati Ins. Co.***, 54 F.Supp.2d 1090 (M.D. Ala. 1999), the plaintiff brought a claim for rot damage to his house due to a negligently-installed roof and EIFS. ***Id.*** at 1093. Rot was excluded under the policy, and the ensuing loss language appeared in the rot exclusion. ***Id.*** at 1094. In both of these cases, the claimed loss was excluded, and the ensuing loss language in the policy followed those exclusions. However, in the case at bar, the ensuing loss language appeared in the workmanship exclusion, whereas the claimed loss was for water damage. As the trial court stated, "[t]hese are separate perils." The perils in ***Fiess*** and ***Schloss*** were one and the same.

Finally, USAA relies on ***Smith v. State Farm Fire & Cas. Co.***, 425 S.E.2d 719 (N.C. Ct. App. 1993) and ***Alwart v. State Farm Fire & Cas. Co.***, 508 S.E.2d 531 (N.C. Ct. App. 1998). These cases both contain ensuing loss provisions within the workmanship exclusions, as in the instant case. However, in ***Smith***, the plaintiffs claimed that they were seeking to recover only for "their ensuing losses and not for any loss directly due to the defective workmanship." ***Id.*** at 720. The court in that case essentially held that the plaintiffs' position was a distinction without a difference and found that their claim was excluded under the policy. ***Id.*** at 721-22. In ***Alwart***, the plaintiffs filed a claim for faulty workmanship resulting in buckling and bulging of their exterior walls. ***Id.*** at 532. Their policy excluded bulging or shrinking of walls. ***Id.*** Because such a claim was specifically excluded, the court found that the ensuing loss provision was of no help to the plaintiffs. ***Id*** at 533-34. Again, in the instant case, the plaintiff's claim for water damage ensuing from the negligent installation of EIFS was a separate peril and coverage was provided under the policy.

In summary, we hold that the plaintiff's claim for water damage arising from the faulty design or negligent installation of EIFS is covered under his insurance policy and is not excepted or excluded under the policy language. To the extent that the policy language could be given another reasonable interpretation that would effectively deny coverage, the ambiguity that would be created by two reasonable interpretations would, under the law, have to be resolved in favor of the interpretation favorable to the insured. *See **Travelers Ins. Co.***, 491 S.W.2d at 366, 367.

V.

The judgment of the trial court is affirmed. This case is remanded to the trial court for further proceedings, consistent with this opinion. Costs on appeal are taxed to the appellant, United Services Automobile Association.

_____

CHARLES D. SUSANO, JR., JUDGE
