IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2022 Session

## LINDA KINDRED ET AL. v. EVELYN TOWNSEND ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-002413-16  Valerie L Smith, Judge**

_____

**No. W2021-01481-COA-R3-CV**

_____

This negligence action arises from the collision of Plaintiff/Appellee's Mercedes convertible with a tractor-trailer operated by Defendant/Appellant in the scope of her employment.  The trial court determined that Appellant was more than 50 percent at fault for the accident and apportioned 75 percent fault to Appellant and 25 percent fault to Plaintiff/Appellee.  The trial court also determined that Defendant/Appellant employer was vicariously liable for the damages awarded.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

R. Scott McCullough and Richard Sorin, Memphis, Tennessee, for the appellants, Perimeter Transportation Co., LLC, and Evelyn Townsend.

Brandon L. Flechas and Philip A. Stroud, Southhaven, Mississippi, for the appellees, Linda Kindred and Derrick Kindred.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

The morning of July 29, 2015, was dry and clear as Plaintiff/Appellee Linda Kindred ("Ms. Kindred") traveled westbound in the center lane of Holmes Road in

Memphis, Tennessee, and Defendant/Appellant Evelyn Townsend ("Ms. Townsend") traveled eastbound on the same road. Ms. Kindred was operating a Mercedes convertible with the top down; Ms. Townsend was operating a fully-loaded, 73-foot tractor-trailer in the scope of her employment with Defendant/Appellant Perimeter Transportation Co., LLC ("Perimeter," and together with Ms. Townsend, "Appellants"). Shortly after 7:00 a.m., the vehicles collided at the intersection of Holmes Road and Hickory Hill Road ("Hickory Hill") as Ms. Townsend turned left/north to proceed through the intersection toward Hickory Hill.

On June 13, 2016, Ms. Kindred and her husband, Derrick Kindred ("Mr. Kindred," and together with Linda Kindred, the "Kindreds" or "Appellees"), filed suit against Appellants in the Circuit Court for Shelby County ("trial court"). In January 2019, the trial court granted the Kindreds' motion to amend their complaint, and they filed an amended complaint on January 25, 2019. In their amended complaint, the Kindreds asserted a negligence cause of action against Ms. Townsend and a claim for negligent training and supervision against Perimeter. They also asserted a claim of vicarious liability against Perimeter under the doctrine of *respondeat superior*. Ms. Kindred prayed for compensatory and consequential damages in the amount of $5,000,000.00, post-judgment interest, attorney's fees, and costs. Mr. Kindred prayed for loss of consortium damages in the amount of $2,000,000.00, post-judgment interest, attorney's fees, and costs. The Kindreds also prayed for the matter to be tried by a jury.

Appellants filed their answer on February 11, 2019. Appellants generally denied all allegations of negligence. They asserted that Ms. Kindred was negligent in the operation of her vehicle; that Ms. Kindred was negligent per se because she violated Memphis ordinances 24-116 and 24-117; and that Ms. Kindred's negligence was the proximate cause of any injuries. Appellants also asserted the doctrine of comparative fault against Ms. Kindred and prayed for a trial by jury.

Following discovery and a failed attempt at mediation in May 2019, the case was set to be heard by a jury in April 2020. In March 2020, the parties filed numerous motions in limine to limit or exclude testimony, statements, or depositions of multiple witnesses.[1]

---

[1] As an initial matter, we note that, although the parties raise no issue concerning the admission or exclusion of evidence, the record transmitted to this Court contains numerous volumes related to the many motions in limine made in the trial court, including duplicates of documents filed with those motions. Rule 24 of the Tennessee Rules of Appellate Procedure requires the appellant to prepare the record to provide the appellate court "a 'fair, accurate and complete account' of what transpired at the trial level." *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005) (quoting *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993)). The appellee may designate additional portions of the record that "it deems necessary" to our review. *Id.* However, the inclusion of portions of the trial record that are extraneous to our resolution of the issues presented on appeal imposes that duty on the appellate courts. As we previously have observed:

It is too often the case that an Appellant includes all filings made in the trial court and every

The Covid-19 pandemic precluded the scheduled jury trial, and the parties agreed to a bifurcated bench trial on the issues of liability and damages.

The matter was heard by the trial court on August 31 and September 1, 2020. The bench trial included testimony of the parties and several experts (both live and by Zoom). Redacted depositions of eye-witnesses were submitted to the trial court by agreement of the parties.

By order entered October 12, 2020, the trial court found that Ms. Townsend "proceeded into the intersection on a permissive green light and began her turn without sufficient space to safely complete her turn." The trial court determined that Ms. Townsend was more than 50 percent at fault for the accident. It also determined that Ms. Kindred should have seen the tractor-trailer in the intersection and taken some evasive action to avoid the collision. The trial court apportioned 75 percent fault to Ms. Townsend and 25 percent fault to Ms. Kindred. The trial court entered an award of damages on November 19, 2021, and amended the order on December 1, 2021. After the application of comparative fault of 25 percent, the trial court awarded Ms. Kindred damages for medical expenses already incurred in the amount of $536,171.48; damages for future medical expenses in the amount of $406,469.22; damages for lost wages and lost earning capacity in the amount of $586,754.25; and noneconomic damages for pain and suffering, loss of enjoyment, disfigurement, and permanent injury in the amount of $1,443,750.00. After application of the statutory limit set out in Tennessee Code Annotated section 29-39-102(a)(2), the trial court fixed noneconomic damages at $750,000.00. After finding that the Kindreds had divorced in 2018, the trial court awarded Mr. Kindred damages in the amount of $500.00 for loss of consortium – reduced on the basis of comparative fault to $375.00. The trial court taxed costs to Appellants and entered its order *nunc pro tunc* to November 19, 2021.

portion of the transcript of the hearing (including arguments of counsel) in contravention of the foregoing Rule of Appellate Procedure. The problem with inclusion of extraneous filings that are clearly excluded from the appellate record is that it places upon this Court a duty that falls to the Appellant – to prepare a correct and complete record on appeal. Tenn. R. App. P. 24(b). In making that record, the Appellant should adhere to the mandates contained in Tennessee Rule of Appellant Procedure 24(a). This Court endeavors to file its opinions in a timely manner; however, when placed in the position of having to review volumes of extraneous, unnecessary, and irrelevant filings, our goal is hindered and the interests of judicial economy are stymied.

*Vraney v. Med. Specialty Clinic, P.C.*, No. W2012-02144-COA-R3-CV, 2013 WL 4806902, at *16 n.1 (Tenn. Ct. App. Sept. 9, 2013). We urge the bar to comply with the obligations imposed by Rule 24 as we endeavor to thoroughly review the records transmitted to us in a timely manner.

- 3 -

Appellants filed a notice of appeal to this Court on December 16, 2021. Upon initial review of the record, we determined that the trial court's order did not adjudicate the Kindreds' claim of negligent training/supervision against Perimeter, their claims against Perimeter based on vicarious liability, or their claim for attorney's fees.[2] We also determined that "given the trial court's failure to specifically state against whom the damages were awarded," we could not discern against whom the judgment was entered. Accordingly, we remanded the matter to the trial court on June 24, 2022, "to allow the parties an opportunity to obtain a final judgment that brings clarity to the question pertaining to the award of monetary damages, namely against whom the award is made, and a specific ruling that all claims are resolved." The parties were afforded thirty days to obtain a final judgment in the matter.

On July 22, 2022, the trial court entered an order styled "order certifying 'amended order awarding damages' as final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure." In its order, the trial court stated that the parties "agree[d] and stipulate[d] to the entry of a Final Judgment[.]" It corrected several "scrivener's errors" in its October 2020 and December 2021 orders, including the court's calculations of the total amount of damages awarded to Ms. Kindred. It awarded the Kindreds discretionary costs in the amount of $20,575.74; found no basis for an award of attorney's fees in the matter and specifically declined the Kindreds' prayer for attorney's fees; and found that the Kindreds' claim for negligent training/supervision had been voluntarily nonsuited in open court. The trial court also found that Perimeter "is vicariously liable for the actions of [Ms. Townsend] as alleged in Plaintiffs' First Amended Complaint." The trial court denied all motions not specifically ruled upon.

Although not specifically stated in the trial court's order, we are satisfied that the trial court's determination that Perimeter is vicariously liable for Ms. Townsend's actions amounts to an assessment of damages against Perimeter in this case. Further, notwithstanding the trial court's reference to Rule 54.02 of the Tennessee Rules of Civil Procedure, we are satisfied that the trial court has adjudicated all the claims of all the parties in this case and that the judgment is now final and appealable pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. We now turn to the issues.

---

[2] Under Rule 3 of the Tennessee Rules Appellate Procedure, we assume jurisdiction over appeals from final judgments only. **Bayberry Assoc. v. Jones**, 783 S.W.2d 553, 559 (Tenn. 1990). Rule 3(a) of the Tennessee Rules of Appellate Procedure provides, in relevant part:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

- 4 -

## II. ISSUES

Appellants raise the following issues for our review, as stated in their brief:

1) Is the following material Finding of Fact by the trial court erroneous and factually unsupported:

> 8. Defendant Evelyn Townsend proceeded into the intersection on a permissive green light and began her turn without sufficient space to safely complete her turn.

2) Based upon the live and deposition testimony of the witnesses at trial, should the trial court have properly found that Evelyn Townsend began her left turn with a protected left turn arrow and not a "permissive green light"?

3) If Evelyn Townsend began her left turn at the intersection with a protected green turn arrow, did Evelyn Townsend comply with all applicable duties of care for making a left turn at an intersection with a protected left turn arrow?

4) If Evelyn Townsend began her left turn at the intersection with a protected green left turn arrow, did Plaintiff Linda Kindred violate both common law and statutory duties of care by entering the intersection and striking Evelyn Townsend's tractor-trailer in the intersection while Evelyn Townsend was making a proper and legal left turn?

5) Is Plaintiff Linda Kindred 100% at fault for this accident based upon her breach of both her common law and statutory duties to exercise due care by entering the intersection and striking Evelyn Townsend's tractor-trailer in the intersection while Evelyn Townsend was making a proper and legal left turn?

The issues presented by this appeal, as we consolidate and re-state them, are:

1. Whether the trial court erred in its determination that Ms. Townsend breached her duty of care because the evidence preponderates against the trial court's finding that Ms. Townsend turned into the intersection on a permissive green light and not on a protected green arrow.

2. Whether the trial court erred by failing to apportion 100 percent fault to Ms. Kindred because Ms. Kindred breached her duty of care when she entered the intersection while Ms. Townsend was making a legal left turn.

- 5 -

### III. STANDARD OF REVIEW

It is well-settled that the plaintiff in a negligence action is required to prove five essential elements: (1) that the defendant owes the plaintiff a duty of care; (2) that the defendant breached the duty of care by engaging in conduct that falls below the applicable standard of care; (3) an injury or loss; (4) that defendant's action was the cause in fact of plaintiff's injury; and (5) that the action was the proximate, or legal, cause of plaintiff's injury. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (citations omitted).

The issues raised by Appellants in this case are predicated on their assertion that the trial court erred in its determination that Ms. Townsend breached her duty of care because the trial court erred by finding that Ms. Townsend initiated her turn on a permissive green light and not on a protected green arrow. While the existence of a duty is question of law, whether a defendant breached their duty of care is ordinarily a question of fact. *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003).

This case was tried without a jury. Accordingly, under Rule 13(d) of the Tennessee Rules of Appellate Procedure, our review of the trial court's findings of fact is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 512 (Tenn. 2012). The evidence preponderates against the trial court's findings of fact when it supports another finding "with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citation omitted). The trial court's findings of fact must, therefore, contain sufficient underlying facts to clearly disclose the basis of the trial court's determinations. *Lovelace v. Coley*, 418 S.W.3d 1, 34 (Tenn. 2013) (citations omitted). Because the trial court is in in the best position to observe the witnesses and assess their demeanor, we will not reverse a trial court's findings based on its assessment of witness credibility absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W. 3d 779 (Tenn. 1999) (citations omitted). We likewise review a trial court's allocation of fault *de novo* upon the record with a presumption of correctness. *Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000).

### IV. ANALYSIS

We begin our discussion by noting that neither party disputes that every driver has a duty of care to exercise caution. Furthermore, Ms. Kindred has not appealed the trial court's allocation of 25 percent fault to her. Moreover, Appellants do not challenge the amount of damages awarded by the trial court. Rather, Appellants' argument in this case, as we summarize it, is that Ms. Townsend did not breach her duty of care because she initiated her turn while the traffic signal governing her lane of traffic was a green arrow, and her turn was protected; the arrow turned yellow after Ms. Townsend entered the intersection; and Ms. Townsend had no way to know how much time would elapse between the protected green arrow and the permissive green ball. Appellants assert that the trial

court erred in determining that Ms. Townsend entered the intersection when the light was a permissive green, thus negating its determination that Ms. Townsend was at fault. They assert that because Ms. Townsend was not at fault for entering the intersection on a protected green arrow, Ms. Kindred is 100 percent at fault for her injuries.

On the other hand, Ms. Kindred asserts that the evidence does not preponderate against the trial court's findings. She further asserts that, "[e]ven if [Ms.] Townsend entered the intersection before receiving a permissive green ball, it does not change the outcome." In support of this argument, Ms. Kindred cites Tennessee Code 55-8-129(a), which states, in pertinent part: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." With these arguments in mind, we turn to the trial court's judgment.

The trial court heard testimony from eight witnesses:

1. Plaintiff Ms. Kindred;
2. Defendant Ms. Townsend;
3. Officer Lakandus Cole ("Officer Cole"), a patrolman with the Memphis Police Department who responded to the accident on July 29, 2015;
4. Matthew Pitts ("Mr. Pitts"), a civil engineer who is the program manager for traffic signals and markings for the Traffic Engineering Department of the City of Memphis;
5. Robert Lawrence Cole, Sr. ("Mr. Cole"), who operates Trucking Experts, Inc., and establishes commercial trucking safety programs;
6. Michael Conley ("Mr. Conley"), who the parties stipulated to be an expert in trucking safety and the operation of a commercial motor vehicle;
7. Brent Munyon ("Mr. Munyon"), Ms. Kindred's accident reconstruction expert;
8. Brady McMillen ("Mr. McMillen"), Ms. Townsend's accident reconstruction expert.[3]

The trial court also considered the redacted deposition testimony of three eye-witnesses to the accident – Jennifer Sims, Stanley Sims (apparently unrelated to Jennifer Sims), and Tamina Hester – all of whom were driving westbound on Holmes Road when the accident occurred.

We note that Mr. Pitts' testimony regarding the timing of the lights at the intersection of Holmes Road and Hickory Hill is not disputed. The turn north/left onto Hickory Hill from the eastbound lanes of Holmes Road is protected by a green arrow for a

---

[3] The record is inconsistent regarding the spelling of this witness's name – it appears as both "McMillen" and "McMillan." The parties use "McMillen" in their briefs. We accordingly will adopt that spelling here – with apologies to Mr. McMillan for any error.

maximum of 14 seconds, and a yellow caution arrow appears for three seconds before the light turns to a green for eastbound and westbound traffic on Holmes Road.[4] Thus, the turn is protected for a maximum of only 17 seconds. When the light governing the lane for the turn north from eastbound Holmes Road onto Hickory Hill cycles from a yellow arrow, the light for the westbound traffic on Holmes Road turns green instantaneously.[5] Ms. Kindred's testified that she did not see Ms. Townsend's tractor-trailer – or the tractor-trailer that turned north immediately before Ms. Townsend.[6]

We also note that the trial court found Mr. Cole's testimony regarding the standard of care for driving commercial trucks to be "of no value" on the question of liability and appears to have disregarded it. We further note that the trial court observed that the testimony of the three eye-witnesses to the accident differed, but that they all saw Ms. Townsend proceed into the intersection "regardless of what color her arrow or light may have been." The trial court concluded that a reasonable person should have observed the tractor-trailer and taken some evasive action, and the court assessed 25 percent fault to Ms. Kindred. With these observations in mind, we turn to the trial court's findings that: (1) Ms. Kindred proceeded through the intersection on a green light; (2) Ms. Townsend proceeded into the intersection on a permissive green light and began her turn without sufficient space to safely complete her turn; and (3) Ms. Townsend was more than 50 percent at fault for this accident.

In its October 2020 order, the trial court "[took] issue with" Ms. Townsend's credibility "as to the color of the light during the events leading to this accident." The trial court noted Officer Cole's testimony that, immediately after the accident, Ms. Townsend stated that Ms. Kindred ran the light. It further noted that Ms. Townsend "indicated [at trial] that she was wrong about her initial statement that [Ms. Kindred] ran the light." The court stated that it was unable to "equate [Ms. Townsend's] testimony with that of either expert witness." The trial court noted that Ms. Townsend testified that she "saw [Ms. Kindred], but believed she would stop" and concluded that Ms. Townsend "[did] not know what color her light was when she made her turn."

The trial court cited Mr. Munyon's testimony that, assuming Ms. Townsend's statements were true, "[h]is reenactment of the accident showed that with a green arrow [Ms. Townsend's] truck was still 60% in the turn lane." The trial court further noted that

---

[4] Under Tennessee Code Annotated section 55-8-110(7), three seconds is the minimum time exposure for a yellow light when a traffic signal successively displays green, yellow, and red lights for the direction of motorists.

[5] We observe that Mr. Pitts testified that some traffic lights in Memphis have a timing delay, but the light at the Holmes Road/Hickory Hill intersection does not. No cause of action has been asserted against the City of Memphis in this case.

[6] We observe that the observations of the eye-witnesses differed with respect to whether the vehicle preceding Ms. Townsend was another tractor-trailer or two cars. However, Ms. Townsend testified that a tractor-trailer turned immediately before her.

Mr. Munyon "went on to state that when [Ms. Townsend's] light turned to a yellow arrow, her truck was still pointed straight when the light turned to a green ball." The court stated that Mr. McMillen "presented a similar demonstration to the [c]ourt, but indicated that it contained a glitch in the software which caused an error. His testimony indicated among other things, that there was no reason that [Ms. Kindred] should not have seen [Ms. Townsend], and that she bears responsibility for the accident." The trial court found Mr. Munyon's testimony "to be more likely than that of Mr. McMill[e]n[]" and held that Mr. Munyon was "thus a more credible witness." The court noted that the experts used different rates of acceleration and, therefore, came to different conclusions. The trial court found Mr. Pitts to be "wholly credible" and found that, "taken as a whole," the evidence demonstrated that Ms. Kindred proceeded through a green light, and Ms. Townsend "proceeded into the intersection of a permissive green light and began her turn without sufficient space to safely complete her turn."

On review of the record, we agree with the trial court that the depositions of the three eye-witnesses shed no light on the question of whether Ms. Townsend initiated her turn into the intersection on a protected green arrow, or a yellow arrow. We also observed that the depositions are somewhat contradictory regarding various details of the traffic flow at the time of the accident – including which lane Ms. Kindred was traveling in and whether Ms. Kindred was stopped at the red light on Holmes Road before the light turned green. However, all of the eye-witnesses testified that: (1) the light was green when Ms. Kindred entered the intersection; and (2) the cab of the tractor-trailer operated by Ms. Townsend was in the intersection when she and Ms. Kindred collided.

At the August 31, 2020 hearing, Ms. Kindred testified that she is a licensed practical nurse and that she was on her way to work when the accident occurred. Ms. Kindred explained that she was traveling in the westbound center lane of Holmes Road, that the collision occurred "[i]n the middle of the intersection" with Hickory Hill, and that she drove the route on her way to work five days a week. Ms. Kindred stated that she was aware that traffic came from the other direction and that traffic also turned left across the intersection. She testified that she saw four or five cars in the left and right lanes as she approached the intersection, that there was no one ahead of her in the center lane, and that she was unable to tell whether there were any vehicles in the turn lane of the eastbound lanes. Ms. Kindred stated that the light was red as she approached the intersection, that it changed from red to green "maybe about 4 seconds" before she reached the intersection, that she was traveling at a rate of 45 miles per hour, and that she did not slow down before entering the intersection. When asked whether she could see Ms. Townsend's tractor-trailer, Ms. Kindred stated that she "could see" the turn lane but was focused straight ahead. When asked whether she saw the tractor-trailer that crossed the intersection ahead of Ms. Townsend, Ms. Kindred replied: "There was not a tractor-trailer anywhere in the lane that I was driving in." She asserted that she "never saw anything in the intersection. Period." She also stated that she was focused on her lane of travel and that "nothing said that [she] could not enter that intersection." Ms. Kindred acknowledged that she was eating a yogurt

during her commute but maintained that she only "took bites" while her vehicle was stopped.

At the September 1, 2020 hearing, Ms. Townsend testified that she had been a commercial truck driver since 2012 and that she began working for Perimeter in December 2014. She testified that she had not been in an accident previously, that she was trained to enter a turn through an intersection on a protected green light, and that she "would never turn on a yellow light."

Ms. Townsend also testified that she had slept in her truck at the Perimeter yard off Holmes Road on the night before the July 2015 collision, that her tractor-trailer carried a 40,000-pound load on the day of the accident, and that it weighed approximately 80,000 pounds. She testified that she left the Perimeter yard at 7:00 a.m. on the day of the collision. Ms. Townsend explained that she drove off the Perimeter yard three or four times a week, and that she turned left/north from Holmes Road onto Hickory Hill – carrying a full load – at least once a week.

Ms. Townsend testified that, on the morning of the collision, another tractor-trailer was in front of her and stopped at the light as she entered the left turn lane to turn onto Hickory Hill. She stated that she was coasting behind the other truck, that the light changed from red to green, and the other truck turned before she reached it. She stated that the first truck blocked her view of the overhead light, but she could see the light on the pole at the left corner. Ms. Townsend stated that when the light turned green, the truck ahead of her turned and she "started escalating [her] speed to make the turn." She testified that she "still had a green protected light, arrow to turn[]" when she reached the stop bar,[7] that she never came to a complete stop, that she started to turn her wheel as soon as she crossed over the line, and that she could see the light turn yellow while she "was in the middle of [her] turn." Ms. Townsend stated that she was scanning the traffic and that Ms. Kindred's vehicle "caught [her] eye because [she] saw a car coming." She stated that she "just thought it wasn't going to stop[,]" although all the other vehicles coming in her direction were stopped at the intersection. Ms. Townsend asserted that, although she previously had maintained that Ms. Kindred drove through a red light, she later realized that she looked away from the yellow light when she saw Ms. Kindred's vehicle and that she did not know that the light had changed to a green ball.

Ms. Townsend repeatedly stated that she began her turn on a green protected arrow and that she was past the first lane of westbound, on-coming traffic when the light turned yellow. When asked whether "that would put [her] less than ten feet from the point of impact when [her] light turned to yellow," Ms. Townsend stated: "I don't know where it would put me." She stated that, although she was past the first lane of oncoming traffic

---

[7] A "stop bar" is a thick white line on the road that is the barrier for entering an intersection. If the front tires of the vehicle cross the stop bar, the vehicle is in the intersection.

- 10 -

when the light turned yellow, she did not know how long the light would stay yellow. She also stated that she had passed through the intersection "hundreds, if not thousands" of times but did not know the timing of the light or how long the turn arrow stayed yellow before cycling to a green ball. Ms. Townsend further testified that she shifted gears and escalated her speed as she made the turn, but she did not know "how fast [she] was going."

During the 2020 hearing, the parties stipulated that Messrs. Munyon and McMillen were qualified forensic accident reconstructionists. Mr. Munyon testified that he and an assistant visited the scene of the accident and took measurements and photographs. Mr. Munyon testified that, pursuant to Ms. Kindred's instructions, he based his opinions on the assumption that the statements made by Ms. Townsend in her deposition – with the exception of the color of the traffic light – were true. Accordingly, Mr. Munyon based his opinions on the assumptions that:

1. another tractor-trailer was at a "dead stop" at a red light at the stop bar when Ms. Townsend "came up to make a left-hand turn[.]"
2. that Ms. Townsend was behind the stopped tractor-trailer but never came to a complete stop
3. that Ms. Townsend was coasting at approximately two miles per hour as she approached
4. that the light changed from red to a green arrow while she was coasting
5. that the first tractor-trailer immediately entered the intersection when the light turned to a green arrow
6. that Ms. Townsend followed the first tractor-trailer at a distance of approximately one car length, or 20 feet.

Mr. Munyon testified that, based on the deposition of Mr. Pitts, he also assumed that the protected turn arrow stayed green for the maximum 14 seconds. He testified that, at 14 seconds – when the light turned yellow – 60-to-65 percent of Ms. Townsend's truck was "still in the turn lane." He further testified that the intersection is 150 feet across and that the front of Mr. Townsend's truck would have been 32 feet beyond the stop bar when the light turned yellow. Mr. Munyon testified that, when the light cycled to a permissive green ball, Ms. Townsend traveled an additional 52.2 feet to the collision point and that 20.2 seconds elapsed between the time the light turned from red to a green arrow and the time the truck collided with Ms. Kindred's vehicle. He further testified that, when the light cycled to yellow, Ms. Townsend could have come to a complete stop in 5.27 feet. Mr. Munyon testified that, assuming Ms. Townsend's statements were true and assuming Ms. Kindred was traveling at 45 miles per hour, Ms. Kindred would have been 144 feet from the stop bar when the light turned from red to green.

Mr. Munyon also testified that, given the point of impact in the intersection and the timing of the lights, if he had based his calculations on Ms. Kindred's statements that the light changed approximately 4 seconds before she reached the stop bar (traveling at a rate

of 45 miles per hour), Ms. Townsend's truck would not have crossed the stop bar when the light turned from a green arrow to yellow. He testified that, assuming Ms. Kindred's statements to be true, Ms. Townsend's truck would have been, at most, 32 feet into the turn lane before the light turned from a green arrow to yellow.

Mr. Munyon also testified that Mr. McMillen made his calculations using a "substantially faster" rate of acceleration for Ms. Townsend's truck. He testified that Mr. McMillen assumed Ms. Townsend was traveling at 22 miles per hour at the point of impact and at 15 miles per hour when her tractor trailer reached the stop bar. According to Mr. Munyon, using Mr. McMillen's rate of speed and in view of Mr. Pitts' testimony regarding the timing of the traffic lights, Ms. Townsend's truck would not have crossed the stop bar when the signal changed to green.

Mr. McMillen testified that he reviewed the accident reports and the depositions of the parties, the witnesses, and Mr. Pitts, and that he visited the scene of the accident to take measurements. Mr. McMillen opined that, given the distances and rates of speed, "Ms. Kindred would have had enough time to apply her brakes and taken some type of evasive action and could have possibly – could have even stopped had she been attentive to the movement of the traffic in front of her." With respect to the traffic light governing Ms. Townsend's turn, Mr. McMillen stated:

> And just based off the calculations of her movement in the time from where she entered the intersection and her testimony about the other commercial vehicles in front of her moving through when the light cycled, the calculations said that it would have, but it also revealed that it would not have been a green turn arrow long before it would have cycled to yellow to warn, you know, those that are in the protected turn that their turn won't be protected anymore. It's a cautionary light that the light goes to green. The other question was if you look at—one of the things we don't know for certain is we don't know and I don't know if anybody will ever know where Ms. Townsend or Ms. Kindred for that matter, where they were specifically at the collision, in the collision site, at the moment that the light turned yellow.

Mr. McMillen testified that he "believe[d] that Ms. Townsend had entered the intersection under a protected green and it had gone to yellow while she [was] entering into the intersection." Mr. McMillen also testified that he "wouldn't disagree" that the light had been green for 4.2 to 4.5 seconds before Ms. Kindred arrived at the collision site and that Ms. Kindred would have traveled for approximately .75 seconds from the time she entered the intersection until the collision. On cross-examination, Mr. McMillen testified, in relevant part:

Q. Mr. McMillen, with all due respect, I'm asking you simply based on your understanding of how the traffic lights work. Do you understand that when the light for traffic coming in the direction of Ms. Kindred was a green light, the turn lane traffic simultaneously would have a green ball, not a green arrow and not a yellow arrow? Can you agree?

A. I would agree with that, yes.

Q. Therefore, if Ms. Kindred had a green light for 4.2 to 4.5 seconds before the collision, during that same 4.2 to 4.5 seconds with 100 percent certainty that truck would have had a solid green ball, not a green arrow and not a yellow arrow, correct?

A. That's correct.

Q. And tell me, please, 4.2 to 4.5 seconds before the collision, where was the Perimeter truck?

A. Based on the testimony, I believe that it would have been at the stop bar.

Q. Would have been at or behind the stop bar not based on the testimony, sir, based on your own calculations, isn't that correct –

A. At the stop bar.

Q. –because you calculated that that truck went from the stop bar to the point of collision in 4.2 to 4.4 seconds, correct?

A. That's correct.

Q. And if, in fact, for 4.2 to 4.5 seconds prior to the collision that truck would have had a solid green ball, then when the arrow changed from yellow to the solid green ball, according to your own calculations, that truck would have been at or behind the stop bar, correct?

A. That's what I said, at the stop -

Mr. McMillen also testified that he "would agree" that Ms. Kindred did not enter the intersection on a red light. When asked his opinion regarding the cause of the accident, Mr. McMillen stated:

I think there's multiple factors in this. Causation by both drivers. I think that Ms. Townsend entered the intersection at a time when she could not have

- 13 -

completed a left turn without blocking the westbound traffic, and I also believe that Ms. Kindred approached the intersection without reducing her speed or any awareness of what was happening in her path in front of her and adjusting her driving behavior accordingly.

In a non-jury case, "the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates otherwise." *Phillips v. United Services Auto. Ass'n*, 146 S.W.3d 629, 631 (Tenn. Ct. App. 2004) (citations omitted). The evidence in this case clearly demonstrates that the traffic light governing Ms. Townsend's left turn cycled from a protected green arrow to yellow at least seven-to-eight seconds before the collision occurred. On review of the record, particularly: (1) the testimony of Messrs. Pitts, Munyon, and McMillen regarding the timing of the traffic light signals, and (2) the distances traveled by Ms. Kindred's and Ms. Townsend's vehicles from the respective stop bars to the point of collision, we conclude that the evidence does not preponderates against the trial court's findings that: (1) Ms. Townsend attempted a left hand turn from Holmes Road onto Hickory Hill when her turn could not be safely completed, and (2) at the time of Ms. Townsend's turn, the traffic light for oncoming traffic on Holmes Road had changed to green. Furthermore, the evidence does not preponderate against the trial court's apportionment of fault in the amount of 25 percent against Ms. Kindred and 75 percent against Ms. Townsend.

## V. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed. Any remaining issues raised by the parties are pretermitted as unnecessary to our disposition of this matter, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs on appeal are taxed to the Appellants, Evelyn Townsend and Perimeter Transportation Co., LLC, for which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE